**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                  :

CENGAGE LEARNING INC.             :
(f/k/a THOMSON LEARNING INC.)    :    07 Civ. 8540 (CM)(THK)
PEARSON EDUCATION, INC.         :
JOHN WILEY & SONS, INC., AND     :
THE MCGRAW-HILL COMPANIES, INC.  :
                                           :    **DECLARATION OF AARON**
                         *Plaintiffs,*   :    **GEORGHIADES**
                                           :

        *- against -*             :

BUCKEYE BOOKS,               :
USED BOOK EXCHANGE         :
TEXTBOOKSRUS.COM, LLC, AND     :
PHILIP SMYRES,             :

                      *Defendant.*  :

------------------------------------------------------------x

     AARON GEORGHIADES, declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

     1.     I am the attorney for Plaintiffs, Cengage Learning, Inc., Pearson Education, Inc., John Wiley & Sons, Inc. and The McGraw-Hill Companies, Inc., in the above-referenced proceeding.

     2.     As such, I am familiar with the facts and circumstances set forth herein. I submit this declaration in support of Plaintiffs' opposition to Defendants' motion to dismiss for lack of personal jurisdiction.

     3.     I have attached hereto as Exhibit "1" a copy of the complaint that was filed in the United States District Court, Southern District of New York on October 2, 2007. [the "Complaint"].

     4.     I have attached hereto as Exhibit "2" the Affidavit of Richard Essig, and all exhibits annexed thereto. ["Essig Aff. ¶"].

5.    I have attached hereto as Exhibit "3" the Affidavit of Patrick Murphy, and all exhibits annexed thereto. ["Murphy Aff. ¶"]

6.    I have attached hereto as Exhibit "4" the Affidavit of William Sampson, and all exhibits annexed thereto. ["Sampson Aff. ¶"]

Dated: New York, New York
       November 8, 2007.

COZEN O'CONNOR
*A Professional Corporation*
Attorneys for Plaintiffs
CENGAGE LEARNING, INC., PEARSON
EDUCATION, INC., JOHN WILEY & SONS,
INC., and THE MCGRAW-HILL COMPANIES,
INC.

By:

Aaron P. Georghiades (AG 8110)
909 Third Avenue, 17th Floor
New York, New York  10022
Tel:  (212) 453-3890
Fax:  (877) 526-3076

EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-------------------------------------------------------x

CENGAGE LEARNING, INC.
(f/k/a THOMSON LEARNING, INC.)
PEARSON EDUCATION, INC.
JOHN WILEY & SONS, INC., and
THE MCGRAW-HILL COMPANIES, INC.,

                                Plaintiffs,

                -against-

BUCKEYE BOOKS,
USED BOOK EXCHANGE,
TEXTBOOKSRUS.COM., LLC, and
PHILIP SMYRES,

                          Defendants.

-------------------------------------------------------x

**07 CIV 8540**

07 Civ.

**COMPLAINT**

**TRIAL BY JURY
DEMANDED**

## Introduction

1.     This case arises from the willful violation of the intellectual property

rights of four book publishers, Cengage Learning, Inc (formerly Thomson Learning, Inc.

and referred to herein as "Thomson"[1]), Pearson Education, Inc. ("Pearson"), John Wiley

& Sons, Inc. ("Wiley"), and The McGraw-Hill Companies, Inc. ("McGraw-Hill")

(collectively, the "plaintiffs" or the "Publishers"), by a group of textbook wholesale,

retail and distribution companies and their principal. Upon information and belief,

Buckeye Books ("Buckeye"), Used Book Exchange ("UBX"), Textbooksrus.com, LLC

("TRU"), and Philip Smyres ("Smyres") (collectively, the "defendants"), purchased,

---

1 On or about August 31, 2007, Thomson Learning, Inc. changed its corporate name to Cengage Learning, Inc. At all relevant times herein, Thomson owned, or (in the case of the THOMSON LEARNING trademark) maintained an exclusive license to, all rights, title and interest in the Thomson trademarks and

imported, distributed, sold and, in some instances, returned (for refunds) to at least one

plaintiff, what they knew to be illegal, pirated (i.e., counterfeit) copies of the books of

Thomson, Pearson and Wiley (the "Pirated Copies"). Defendants also imported,

distributed and sold lower-cost foreign-edition reprints of Thomson, Pearson, Wiley, and

McGraw-Hill books not intended or authorized for resale in the United States (the

"Foreign Editions") (and together with the Pirated Copies, the "Infringing Works").

As set forth below, defendants, who are all, with the exception of TRU, customers

of plaintiffs, deliberately sought out, purchased and imported an unknown number of

Pirated Copies and/or Foreign Editions of plaintiffs' textbooks, bearing plaintiffs'

registered and distinctive trademarks, from foreign countries known for their rampant

textbook piracy. Defendants then, as set forth in further detail below, "restickered" the

Foreign Editions so they would appear to be legitimate U.S. authorized works, and sold

or otherwise distributed all of the Infringing Works from their stores and/or internet

websites, thus infringing upon plaintiffs' copyright and trademark interests. Defendants

UBX and Smyres also returned Pirated Copies to at least one plaintiff, deliberately and

falsely passing them off as legitimate books that defendants originally purchased from

that plaintiff, in order to fraudulently obtain a full refund from that Publisher.

### The Parties

1.      Plaintiff Thomson is a corporation duly organized and existing under the

laws of the State of Delaware with a principal place of business at 200 First Stamford

Place, 4th Floor, Stamford, Connecticut 06902.

---

copyrights detailed herein. All such rights, title and interest in such intellectual property have remained
with the same company; only the company's name has changed.

2.      Plaintiff Pearson is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at One Lake Street, Upper Saddle River, New Jersey 07458.

3.      Plaintiff Wiley is a corporation duly organized and existing under the laws of the State of New York with a principal place of business at 111 River Street, Hoboken, New Jersey 07030.

4.      Plaintiff McGraw-Hill is a corporation duly organized and existing under the laws of the State of New York with its principal place of business at 1221 Avenue of the Americas, New York, New York, 10020.

5.      Plaintiffs are global leaders in providing all manner of educational books and publications and integrated information solutions to higher education, corporate, government and professional customers.

6.      Upon information and belief, defendant Buckeye is a business operating in the State of Ohio, which, upon information and belief, has its principal place of business at 2060 North High Street, Columbus, Ohio, 43201.  Defendant Buckeye also operates through an internet website, www.buckeyebooks.com, which solicits internet users to purchase books through its "Textbooks" link, and invites customers to visit its physical location to purchase books in person.  Defendant Buckeye ships books throughout the United States, and is a customer of plaintiffs.

7.      Upon information and belief, defendant UBX is a business operating in the State of Ohio, which, upon information and belief, is a sister store of defendant Buckeye. UBX owns and operates an internet website, www.ubxbookexchange.com, which lists its

3

physical location as 2060 North High Street, Columbus, Ohio, 43201. Defendant UBX ships books throughout the United States, and is a customer of plaintiffs.

8.    Defendants Buckeye and UBX are described as "sister stores" on UBX's internet website. UBX's website also provides internet customers with an internet hyperlink to Buckeye's website. Defendants Buckeye and UBX share the same physical location, and, upon information and belief, share their sources of storage and stock that they sell to their customers.

9.    Upon information and belief, defendant TRU is a business operating in the State of Ohio, which, upon information and belief, operates through an internet website, www.textbooksrus.com, which solicits internet users to buy new and used textbooks through its "Textbooks" link, and lists its physical location as 2340 Wood Avenue, Columbus, Ohio, 43221. Defendant TRU ships books throughout the United States, including the Southern District of New York.

10.    Defendant Smyres is an individual who, upon information and belief, resides at 10 East 15th Avenue, Columbus, Ohio, 43201. Upon Information and belief, Smyres is the principal of defendants Buckeye, UBX and TRU, and is responsible for ordering, purchasing, importing, distributing, selling and returning for refunds defendants' stock, and is responsible for all decision-making related thereto. Upon information and belief, Smyres personally organizes the purchase, importation, and sale and returns of stock for all three of the entity defendants, Buckeye, UBX and TRU.

4

## Jurisdiction and Venue

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), 15 U.S.C. § 1121, and under 28 U.S.C. 1332(a), by virtue of the diversity of the parties' citizenship and the value of the matter in controversy exceeding $75,000, exclusive of interests and costs.

12.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) because, upon information and belief, a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

## The Facts

### PLAINTIFFS' DISTINGUISHED REPUTATIONS AND THEIR PUBLICATION OF HIGHER EDUCATION TEXTBOOKS

13.     Thomson is among the world's largest providers of tailored learning solutions.  In the academic marketplace, Thomson serves secondary, post-secondary and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments.  Thomson products and services are sold throughout the world, through direct channels and via a worldwide network of distributors.  Thomson invests significant resources annually in the worldwide advertisement and promotion of its goods and services under all of its marks.

14.     Pearson is a renowned global publisher of educational books in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage.  With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many

5

others, Pearson Education provides quality content, assessment tools, and educational services in all media.

15.    Wiley, which has been in continuous operation for 200 years, is a global publisher of print and electronic products, specializing in scientific, technical, and medical books and journals, professional and consumer books and subscription services, and textbooks and other educational materials for undergraduate, graduate, advanced placement students, educators and lifelong learners.

16.    McGraw-Hill is a global publisher and lifelong learning partner to students and teachers of all kinds and addresses virtually every aspect of the education market from pre-kindergarten through professional learning, using traditional materials, online learning and multimedia tools.  McGraw-Hill is also a leading provider of reference and trade publishing for the medical, business, engineering and other professions.

17.    Plaintiffs' higher education businesses are among their core business operations respectively.

18.    Plaintiffs' higher education businesses use multiple channels of distribution, including retail bookstores, online booksellers, sales to all forms of wholesalers, and direct sales to schools, students and other consumers.

19.    Plaintiffs use their alliances, affiliations and relationships with wholesalers, distributors and retailers as part of their respective overall sales, marketing and distribution plans. Those plans expand plaintiffs' geographic reach to actual and potential customers, and allow plaintiffs to operate across various mediums and formats.

20.    Plaintiffs invest heavily in their book publishing programs.  Each year they incur substantial costs for author royalties and other costs of content creation and

licensing, copy editing and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of editorial offices.

21.     The revenue from plaintiffs' respective publications represents the majority - in most cases the vast majority - of plaintiffs' respective annual revenues, and is therefore critical to their financial health and continued operation.

22.     Plaintiffs suffer serious financial injury when their copyrights and trademarks are infringed.  A substantial decline in their income could cause plaintiffs to cease publication of one or more deserving books.  This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving works.

23.     Both publishers and authors alike are deprived of income when their books are unlawfully copied, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

## THE BOOK PUBLISHING
## AND RETAIL INDUSTRY

24.     In a typical chain of supply within the book publishing/retail industry, wholesalers, distributors and some retailers obtain their stock of books directly from the publishers and then sell those books to other book retailers and customers.

25.     In a typical relationship between publishers and their customers, the customers are permitted to return unsold books – originally purchased from the publisher – to the publisher for a full refund.  This general policy ensures that publishers' customers, such as book retailers, wholesalers and distributors, are not overburdened by ordering more books than they eventually may sell to their consumers, thus encouraging

7

them to order as many books as they desire, with the comfort of knowing they can return any excess or unsold books to the publishers for a full refund. An additional benefit enjoyed by the Publishers' customers in that regard is the ability to experiment with the composition of their stock, and to focus their purchases on titles that appear to be the most profitable for them in any given year. When executed in good faith, the Publishers and their customers benefit from the returns process described above as book sales are maximized, and customers continue to purchase books from the Publishers. In turn, the Publishers rely on their customers to act in good faith when seeking refunds, and to only return legitimate copies of unsold stock, originally purchased from the publishers, for a full refund.

26.    Plaintiffs often create different versions of their educational titles, depending on the intended ultimate place of sale. The sale of Foreign Editions, for instance, is normally limited to specified foreign countries. Foreign Editions differ in material ways from the U.S. editions. They are manufactured abroad, are often printed on thinner paper, have different cover and jacket designs, have lower quality binding, are printed in fewer colors, if any, and are generally available at lower prices than their U.S. counterparts. Also, Foreign Editions often will not be accompanied by supplements such as CD-ROMs, study guides, or access to accompanying electronic materials that are often included with authorized U.S. editions. The Publishers create the materially different Foreign Editions in order to permit the Publishers to offer educational materials to students and consumers in developing countries that might not otherwise have meaningful access to such materials. Because of the significant difference in quality, the sale of Foreign Editions is restricted to certain developing foreign countries, where they

8

can be sold at a significantly lower price. To that end, the Publishers' Foreign Editions are marked to indicate their low-cost by a legend indicating that the title is a "Low Price Edition" and/or authorized for sale only in a particular country or region, or some other similar language, and have different ISBNs than their U.S. counterparts.

27.    Foreign Editions are not intended or authorized for resale in the United States. If Foreign Editions are imported and sold in the U.S., plaintiffs' customers will unwittingly be purchasing books of significantly different quality than plaintiffs' authentic U.S. edition works, damaging consumer satisfaction, consumer confidence in plaintiffs' works, and plaintiffs' reputation.

## PLAINTIFFS' FEDERALLY REGISTERED
## COPYRIGHTS AND TRADEMARKS

28.    Thomson duly registered its copyright in: 1) *Modern Physics for Scientists and Engineers*, by Stephen T. Thornton and Andrew Rex (3rd Edition) (ISBN 0534417817) (Reg. No. TX-6-400-354) on August 16, 2006; 2) *Home, School & Community Relations: A Guide to Working with Families*, by Carol Gestwicki (4th Edition) (ISBN 0766803562) (Reg. No. TX-5-074-070) on October 19, 1999; 3) *Global Communication*, by Yahya Kamalipour (2nd Edition) (ISBN 049505027X) (Reg. No. TX-6-375-868) on May 25, 2006; 4) *The Practice of Social Research*, by Earl Babbie (11th Edition) (ISBN 0495093254) (Reg. No. TX-6-358-584) on May 25, 2006; and 5) *Statistical Inference*, by George Casella and Roger L. Berger (2nd Edition) (ISBN 0534243126) (Reg. No. TX-5-418-275) on July 16, 2001 (collectively, the "Thomson Authentic Works").

9

29.     Pearson duly registered its copyright in: 1) *Psychological Consultation and Collaboration: Introduction to Theory and Practice*, by Duane Brown, Walter B. Pryzwansky and Anne C. Schulte (6th Edition) (ISBN 0205411797) (Reg. No. TX 6 150-662) on March 31, 2005; 2) *Instruction of Students with Severe Disabilities*, by Martha E. Snell and Fredda Brown (6th Edition) (ISBN 0131143352) (Reg. No. TX 6-326-392) on March 16, 2006; 3) *Assessment Procedures for Counselors and Helping Professionals*, by Robert Drummond and Karyn Dayle Jones (6th Edition) (ISBN 0131707841) (Reg. No. TX-6-323-750) on March 15, 2006; 4) *The Principalship: A Reflective Practice Perspective*, by Thomas J. Sergiovanni (5th Edition) (ISBN 0205457231) (Reg. No. TX 6 171-304) on April 22, 2005; 5) *Organizational Behavior*, by Stephen P. Robbins, (11th Edition) (ISBN 0131914359) (Reg. No. TX-6-103-180) on February 1, 2005; 6) *Microeconomics*, by Robert S. Pindyck and Daniel L. Rubinfeld, (6th Edition) (ISBN 0130084611) (Reg. No. TX-6-156-330) on March 21, 2005; and 7) *Transport Processes and Separation Process Principles*, by Christie J. Geankoplis (4th Edition) (ISBN 0131013674) (Reg. No. TX-5-717-312) on March 24, 2003 (collectively, the "Pearson Authentic Works").

30.     Wiley duly registered its copyright in: 1) *Marketing Research*, by David A. Aaker, V. Kumar and George S. Day (9th Edition) (ISBN 0470050764) (Reg. No. TX-6-569-690) on April 23, 2007; 2) *Applied Statistics and Probability for Engineers*, by Douglas C. Montgomery and George C. Runger (4th Edition), (ISBN 0471745898) (Reg. No. TX 6-428-380) on August 25, 2006; and 3) *Control Systems Engineering*, by Norman S. Nise (4th Edition), (ISBN 0471452432) (Reg. No. TX-5-800-945) (collectively, the "Wiley Authentic Works").

31.     McGraw-Hill duly registered its copyright in *Psychology: The Science of Mind and Behavior*, by Michael W. Passer and Ronald E. Smith (2nd Edition) (ISBN 0071110542) (Reg. No. TX-6-402-511) on June 22, 2006 (the "McGraw-Hill Authentic Work") (The Thomson, Pearson, Wiley and McGraw-Hill Authentic Works are collectively referred to in this Complaint as the "Publishers' Authentic Works" or the "Authentic Works").

32.     The Thomson Authentic Works bear the "Thomson Learning" trademark and service mark, which Thomson (or its affiliates and/or licensors) has duly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") under U.S. Registration Numbers 1,839,356/ 2,810,953/ 2,926,467. The Thomson Authentic Works also both bear the "ITP" and "PWS" designs, which Thomson has duly registered with the USPTO under Registration Numbers 1,866,136 and 2183184/ 2,146,913, respectively. Both the "Thomson" word mark and "ITP" and "PWS" designs are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

33.     Thomson's trademarks, as described above, are distinctive and arbitrary. Thomson has invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with the above-described marks.

34.     The Pearson Authentic Works bear the "Pearson" word mark, which Pearson PLC, Pearson's ultimate parent company, is the owner of, and Pearson is the exclusive licensee with accompanying right and duty to protect and enforce the rights therein, and which is duly registered on the Principal Register of the USPTO under U.S. Registration Numbers. 2,599,724 / 2,600,081/ 2,652,792 / 2,679,355 / 2,691,830 /

11

2,694,359, all of which are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

35.    Pearson's trademarks, as described above, are distinctive and arbitrary. Pearson has invested decades of effort in building its reputation of quality educational and literary publishing, which consumers associate with the above-described mark.

36.    The Wiley Authentic Works bear the "Wiley" trademark and service mark, which Wiley has duly registered on the Principal Register of the USPTO under U.S. Registration Numbers 1,003,988/2,159,987. The Wiley Authentic Works also bear the "JW" design, which Wiley has duly registered with the USPTO under Registration Number 2,168,941. Both the "Wiley" word mark and "JW" design are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

37.    Wiley's trademarks, as described above, are distinctive and arbitrary. Wiley has invested two hundred years of effort in building a reputation of quality in the publishing industry, which consumers associate with the above-described marks.

38.    The McGraw-Hill Authentic Work bears the "McGraw-Hill" trademark and service mark, which McGraw-Hill has duly registered on the Principal Register of the USPTO under U.S. Registration Number 1,350,345, and the trademark and service mark "The McGraw-Hill Companies," which McGraw-Hill has duly registered on the USPTO under U.S. Registration Number 3,103,212.

39.    McGraw-Hill's trademarks, as described above, are distinctive and arbitrary. McGraw-Hill has invested over a century's worth of effort in building a reputation of quality in the publishing industry, which consumers associate with the above-described mark.

### DEFENDANTS' SALES OF COUNTERFEIT
### AND GREY GOOD TEXTBOOKS

40.      On September 13, 2006, Thomson placed an order on the TRU e-commerce website for the Thomson Authentic Work, *Modern Physics for Scientists and Engineers,* by Stephen T. Thornton and Andrew Rex.  On May 20, 2007, Thomson placed an order on the TRU e-commerce website for Thomson Authentic Work, *Global Communication,* by Yahya Kamalipour.  On May 22, 2007 and May 30, 2007, Thomson placed orders on the TRU e-commerce website for the Thomson Authentic Work, *Home, School & Community Relations: A Guide to Working with Families,* by Carol Gestwicki.

41.      On or around September 17, 2006, May 24, 2007, May 26, 2007 and June 3, 2007, respectively, TRU delivered the above titles to Thomson. Upon Thomson's analysis of the titles, it determined that the delivered books were all Pirated Copies of Thomson's Authentic Works, bearing Thomson's trademarks, and falsely stating that they were legitimately manufactured in the United States.

42.      On August 6, 2007, Thomson placed an order on the TRU e-commerce website for the Thomson Authentic Work, *Statistical Inference,* by George Casella and Roger L. Berger.

43.      On August 21, 2007, the above title was delivered to Thomson. Upon Thomson's analysis of the title, it determined that the delivered book was a Foreign Edition of the Thomson Authentic Work, intended and authorized for sale in Asia only.

44.      Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising those territorial restrictions governing the distribution and sale of the above title, as

13

reflected on its back cover. Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the above title, misrepresenting that it was manufactured in the United States, by placing a laser printed bar code along with a U.S. ISBN covering the Asia ISBN and bar code.

45.    On September 20, 2006, Pearson placed an order on the TRU e-commerce website for the following Pearson Authentic Works: 1) *Psychological Consultation and Collaboration: Introduction to Theory and Practice*, by Duane Brown, Walter B. Pryzwansky and Anne C. Schulte; 2) *Instruction of Students with Severe Disabilities*, by Martha E. Snell and Fredda Brown; 3) *Assessment Procedures for Counselors and Helping Professionals*, by Robert Drummond and Karyn Dayle Jones; and 4) *The Principalship: A Reflective Practice Perspective*, by Thomas J. Sergiovanni.

46.    On September 23, 2006, TRU delivered the above titles to Pearson. Upon Pearson's analysis of the titles, it determined that the delivered books were all Pirated copies of Pearson's Authentic Works, bearing Pearson's trademarks, and falsely stating that they were legitimately manufactured in the United States, with the exception of *Assessment Procedures for Counselors and Helping Professionals*, by Robert Drummond and Karyn Dayle Jones, which Pearson determined to be the only legitimate copy delivered by TRU.

47.    On August 3, 2007, Pearson placed an order on the TRU e-commerce website for the following Pearson Authentic Works: 1) *Organizational Behavior*, by Stephen P. Robbins and Tim A. Judge; 2) *Microeconomics*, by Robert S. Pindyck and Daniel L. Rubinfeld; and 3) *Transport Processes and Separation Process Principles*, by Christie J. Geankoplis.

14

48.    On August 8, 2007, TRU delivered the above titles into New York, to Pearson. Upon Pearson's analysis of the titles, it determined that the delivered books were all Foreign Editions of the Pearson Authentic Works, intended and authorized for sale in Asia only.

49.    Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Editions, thus disguising those territorial restrictions governing the distribution and sale of the above titles, as reflected on their back covers. Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the above titles, misrepresenting that they were manufactured in the United States, by placing a laser printed bar code along with a U.S. ISBN covering the Asia ISBN and bar code.

50.    On September 30, 2006, Wiley placed an order on the TRU e-commerce website for the Wiley Authentic Work, *Applied Statistics and Probability for Engineers*, by Montgomery and Runger. On April 10, 2007, Wiley placed an order on the TRU e-commerce website for the Wiley Authentic Work *Marketing Research*, by David A. Aaker, V. Kumar and George S. Day.

51.    On October 4, 2006, and April 13, 2007, respectively, TRU delivered the above titles into New York, to Wiley. Upon Wiley's analysis of the *Applied Statistics* title, it determined that the copy purchased from TRU was a Foreign Edition of the Wiley Authentic Work, intended and authorized for sale in Asia only. Upon Wiley's analysis of the *Marketing Research* title, it determined that the delivered book was a Pirated Copy of

15

Wiley's Authentic Work, bearing Wiley's trademarks, and falsely stating that it was legitimately manufactured in the United States.

52.     On June 1, 2007, Wiley placed another order on the TRU e-commerce website for the Wiley Authentic Works, *Marketing Research*, by David A. Aaker, V. Kumar and George S. Day, and *Applied Statistics and Probability for Engineers*, by Douglas C. Montgomery and George C. Runger.

53.     On June 6, 2007, TRU delivered the above titles into New York, to Wiley. Upon Wiley's analysis of the *Marketing Research* title, it determined that the delivered book was another Pirated Copy of Wiley's Authentic Work, bearing Wiley's trademarks, and falsely stating that it was legitimately manufactured in the United States. Upon Wiley's analysis of the *Applied Statistics* title, it determined that the copy purchased from TRU was another Foreign Edition of the Wiley Authentic Work, intended and authorized for sale in Asia only.

54.     Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising, those territorial restrictions governing the distribution and sale of the *Applied Statistics* title, as reflected on its back cover. Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the *Applied Statistics* title, misrepresenting that the title was manufactured in the United States, by placing a laser printed bar code along with a U.S. ISBN covering the Asia ISBN and bar code.

55.     On August 2, 2007, Wiley placed an order on the TRU e-commerce website for the Wiley Authentic Work, *Control Systems Engineering,* by Norman S. Nise.

56.    On or about August 7, 2007, TRU delivered the above title to Wiley, into New York. Upon Wiley's analysis of the title, it determined that the delivered book was a Foreign Edition of the Wiley Authentic Work, intended and authorized for sale in Asia only.

57.    Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising, those territorial restrictions governing the distribution and sale of the *Control Systems Engineering* title, as reflected on its back and front cover.  Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the *Control Systems Engineering* title, misrepresenting that the title was manufactured in the United States, by placing a laser printed bar code along with a U.S. ISBN covering the Asia ISBN and bar code.

58.    On or about August 1, 2007, McGraw-Hill placed an order on the TRU e-commerce website for the McGraw-Hill Authentic Work, *Psychology: The Science of Mind and Behavior,* by Michael W. Passer and Ronald E. Smith.

59.    On August 7, 2007, TRU delivered the above title to McGraw-Hill.  Upon McGraw-Hill's analysis of the title, it determined that the delivered book was a Foreign Edition of the McGraw-Hill Authentic Work, manufactured in India, and intended and authorized for sale in India and certain neighboring territories only.

60.    Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising,

those territorial restrictions governing the distribution and sale of the *Psychology* title, as reflected on its back cover. Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the *Psychology* title and to misrepresent that the title was manufactured in the United States by placing a laser printed bar code along with a U.S. ISBN covering the Indian ISBN and bar code.

61.    Upon information and belief, all these actions were intended to, and were successful in, disguising the fact that the Publishers' Foreign Editions were of a materially different quality than the standard U.S. editions and that they are not intended for distribution and sale in the United States.

62.    Although many of the Pirated Copies sold by TRU are of inferior quality compared to the Publishers' Authentic Works, most of the Pirated Copies appear to be plaintiffs' Authentic Works, such that actual and prospective purchasers, and others who are familiar with Thomson, Pearson and Wiley authentic products, and the related trademarks, are likely to believe that the Pirated Copies are plaintiffs' Authentic Works. This weakens, blurs, and tarnishes plaintiffs' respective trademarks. It further injures plaintiffs' business reputations, by causing their trademarks and the goodwill associated with them to be confused or mistakenly associated with a group or series of pirated textbooks.

63.    Despite the material differences between the Publishers' U.S. editions and the Foreign Editions – which are manufactured in and authorized for sale in foreign countries only – at first glance by an unsuspecting consumer, such books would appear to be substantially similar to the Publishers' Authentic Works. This appearance is emphasized by defendants' intentional, unlawful and deceptive "restickering" of

18

plaintiffs' Foreign Edition's territorial restriction legends and foreign ISBNs and bar codes. Accordingly, actual and prospective purchasers, and others who are familiar with plaintiffs' products and trademarks, are likely to believe that the Foreign Edition are plaintiffs' authentic U.S. publications. This weakens, blurs, and tarnishes plaintiffs' respective trademarks in the U.S. In addition to injuring consumers, it further injures plaintiffs' U.S. business reputations, by causing their trademarks and the goodwill associated with them to be confused or mistakenly associated with a group or series of textbooks of a materially different and lesser quality that are not intended for sale in the United States, as alleged above.

## DEFENDANTS' RETURN OF
## PLAINTIFFS' PUBLICATIONS

64.    Pursuant to the Publishers' refund policy described above, defendants UBX and Buckeye each regularly return "unsold" books to plaintiffs, sending them via United States mail and other common commercial carriers, across state lines, in order to obtain full refunds from plaintiffs.

65.    Upon information and belief, defendant Smyres, as principal of UBX and Buckeye, personally manages, orchestrates and pursues the return efforts of UBX and Buckeye.

66.    According to Management Practice Inc. ("MPI"), a market-focused strategic and financial consulting firm that compiles sales and returns data from all of the major higher education publishers into monthly publishing industry reports, in the last three calendar years (2004 to 2006), the average percentage of books returned by U.S. higher education publishing companies' customers was 23.4%.

19

67.    In the last three calendar years, and since the beginning of their relationships as customers of the Publishers, defendants UBX, Buckeye and Smyres have regularly sent unusually large numbers of books to some of the plaintiffs, purportedly all returns of the such plaintiffs' Authentic Works, for a full refund, taking advantage of the Publishers' refund policy, as described above.

68.    In the last three calendar years, defendant Buckeye sent a number of books equal to thirty-six percent (36%) of its orders of Thomson's Authentic Works, purportedly all returns of Buckeye's original orders of Thomson's Authentic Works, to Thomson for a full refund. The percentage returns by Buckeye has increased significantly over the last three years, starting at twenty-six percent (26%) in 2004, and rising sharply to fifty-three percent (53%) in 2006.

69.    In the last three calendar years, defendant UBX sent a number of books equal to thirty-six percent (36%) of its orders of Thomson's Authentic Works, purportedly all returns of UBX's original orders of Thomson's Authentic Works, to Thomson for a full refund.  The percentage returns by UBX have increased significantly over the last three years, starting at twenty-one percent (21%) in 2004, and rising sharply to fifty-two percent (52%) in 2006.

70.    In the last three calendar years, defendant Buckeye sent a number of books equal to, on average, fifty-three percent (53%) of its orders of Pearson's Authentic Works, purportedly all returns of Buckeye's original orders of Pearson's Authentic Works, to Pearson for a full refund. The percentage returns by Buckeye have increased significantly over the last three years, starting at forty-four percent (44%) in 2004, and rising sharply to sixty-one percent (61%) in 2006.

71.    In the last three calendar years, defendant UBX sent a number of books equal to, on average, forty-five percent (45%) of its orders of Pearson's Authentic Works, purportedly all returns of UBX's original orders of Pearson's Authentic Works, to Pearson for a full refund.

72.    In the last three calendar years, defendant Buckeye sent a number of books equal to twenty-nine percent (29%) of its orders of Wiley's Authentic Works, purportedly all returns of Buckeye's original orders of Wiley's Authentic Works, to Wiley for a full refund. However, for the current fiscal year, Buckeye has sent a number of books equal to six-hundred and eighty percent (680%) of its orders of Wiley's Authentic Works, to Wiley for a full refund.

73.    In the last three calendar years, defendant UBX sent a number of books equal to fifty-two percent (52%) of its orders of Wiley's Authentic Works, purportedly all returns of UBX's original orders of Wiley's Authentic Works, to Wiley for a full refund. The percentage returns by UBX have increased significantly over the last three years, starting at forty-seven percent (47%) in 2004, and rising sharply to fifty-seven percent (57%) in 2006.

74.    In the last two calendar years (2005 and 2006), defendant Buckeye sent a number of books equal to about forty-six (46%) of its orders of McGraw-Hills's Authentic Works, purportedly all returns of Buckeye's original orders of McGraw-Hills's Authentic Works, to McGraw-Hills for a full refund. The percentage returns by Buckeye has increased significantly over the last two years, starting at about thirty-six percent (36%) in 2005, and rising sharply to about fifty-six percent (56%) in 2006.

75.     In the last two calendar years, defendant UBX sent a number of books equal to about forty-five percent (45%) of its orders of McGraw-Hills's Authentic Works, purportedly all returns of UBX's original orders of McGraw-Hills's Authentic Works, to McGraw-Hills for a full refund. The percentage returns by UBX have increased significantly over the last two years, starting at about thirty-seven percent (37%) in 2005, and rising sharply to about fifty-three percent (53%) in 2006..

76.     The unusually high percentage of books returned to the Publishers for full refunds by defendants Buckeye, UBX and Smyres significantly exceed the MPI industry average.

77.     In returning books to the Publishers for full refunds during the above time period, defendants represented that all of the books which they sent to the plaintiffs were the true and original Authentic Works that defendants originally purchased from the Publishers, and that defendants were unable to sell those books in the ordinary course of business. Upon information and belief, defendants intentionally failed to disclose to plaintiffs that at least some of the books they were purportedly returning were not those that were originally purchased from the Publishers, but that some books were in fact Pirated Copies of the same titles.

78.     On April 16, 2007, as part of a larger return, defendant UBX sent to Thomson five copies of Thomson's Authentic Work, *The Practice of Social Research*, by Earl Babbie, purportedly all returns of one of UBX's original orders of Thomson's Authentic Works, for a full refund. Three of the books sent to Thomson for a refund were determined to be Pirated Copies of *The Practice of Social Research* Authentic Work. They were not the original and authentic versions of Thomson's *Practice of*

22

*Social Research* work, as UBX and its principal, Smyres, represented to plaintiffs on the above date.

79.      Upon information and belief, the unusually high percentages of purportedly returned books from defendants to the Publishers, coupled with the Pirated Copies recently found in one of defendant UBX's returns to Thomson, indicates that defendants are engaging in a practice of sending Pirated Copies to certain of the plaintiffs, deliberately passing them off as the legitimate U.S. edition books originally purchased from the Publishers, in order to improperly obtain a full refund for the books.

80.      Upon information and belief, a significant number of the books sent as returns to certain of the Publishers for full refunds were Pirated Copies of plaintiffs' works.

81.      Upon information and belief, when purportedly returning the apparently unsold books to the Publishers, and at the time of making the above misrepresentations, defendants UBX and Smyres knew their representations as to the authenticity and source of at least some of the books to be false.

82.      During the above time period, including on April 16, 2007, and, upon information and belief, for a period of time in the past extending to the beginning of plaintiff's relationship with defendants, plaintiffs, unaware of the falsity of defendants' representations, and in direct reliance thereupon, provided defendants with full refunds for the books they sent as returns to plaintiffs, in reliance upon defendants' representations as to the books' authenticity and source.

83.      As a result of defendants' misrepresentations, and in direct reliance thereupon, plaintiffs have suffered significant pecuniary harm.

23

84.    Defendant Smyres, as the principal of UBX and Buckeye, had actual knowledge of, managed, orchestrated and pursued the fraudulent returns alleged above.

## DEFENDANTS' WILLFUL INFRINGEMENT OF PLAINTIFFS' COPYRIGHTS AND OTHER INTELLECTUAL PROPERTY RIGHTS

85.    Upon information and belief, defendants frequently purchase Infringing Works from countries in Asia such as Taiwan, Thailand, Malaysia and Singapore, import them to the United States, and sell them to consumers in the United States without the Publishers' authorization.  Upon information and belief, when the imported works are lower cost Foreign Editions of the plaintiff's Authentic Works, as opposed to Pirated Copies, defendants routinely and intentionally obscure the text indicating the territorial sales restrictions applicable to the books, by covering such language with stickers and covering foreign ISBNs with laser printed bar codes and U.S. ISBNs, such that all intentional indications that the Foreign Editions are materially different from the U.S. editions, and all notifications that those particular books are not intended for sale in the U.S. have been completely masked, thus deceiving consumers in that regard.  Upon information and belief, defendants intentionally use this practice of "re-stickering" to falsely advertise the Infringing Works as authentic United States editions, using fake and misleading graphics, photographs, and ISBN numbers associated with the respective Authentic Works, in an effort to mislead consumers into believing they are buying the Publishers' Authentic U.S. editions.

86.    Upon information and belief, defendants also routinely resell the Infringing Works on or through their individual websites and physical locations, and

24

when they are unable to sell their Pirated Copies specifically, defendants regularly send their unsold Pirated Copies to the Publishers, deliberately passing them off as the original Authentic Works defendants purchased from plaintiffs, in order to fraudulently redeem full refunds.

87.    Upon information and belief, all defendants share a common source of stock, which is purchased and assembled by defendant Smyres, who is the principal of defendants UBX, Buckeye and TRU.  Upon information and belief, Smyres regularly travels to countries in Asia to seek out and purchase books at a significantly lower cost, and which are normally Infringing Works, and then imports such works into the United States.

88.    Upon information and belief, in most instances, Smyres personally travels to Asia and sends Pirated Copies and Foreign Editions purchased from Asia, addressed directly to defendant Buckeye at Buckeye's physical location in Ohio, for resale by each of the company defendants, UBX, Buckeye and TRU.

89.    Plaintiffs have never authorized defendants to import or distribute Foreign Editions of their Authentic Works in the U.S., as they are not intended for sale to U.S. consumers, and are of a materially different quality than the genuine and authorized U.S. versions, as alleged above.

90.    Upon information and belief, defendant Smyres directly, personally and deliberately sought out illegal sources of, and purchased, Pirated Copies and Foreign Editions, for the purpose of importing, illegally distributing and reselling such copies to consumers in the United States and elsewhere.  Upon information and belief, Smyres was the moving, active conscious force behind the infringing activity, and each defendant,

25

including Smyres, knowingly supervised and participated in such infringing and illegal activity in violation of plaintiffs' intellectual property rights, and had a direct financial interest in, and stood to gain a direct financial benefit from, such deliberate infringing activity.

91.    Upon information and belief, in engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, defendants also personally induced, caused, and materially contributed to such infringing conduct.

92.    Upon information and belief, defendants did more than supply the means to facilitate the infringement of plaintiffs' intellectual property rights.  They also substantially participated in, and orchestrated, such infringing activities.

93.    Upon information and belief, defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would violate plaintiffs' intellectual property rights, including their copyrights and trademark rights in the Publishers' Authentic Works and other works.

94.    Upon information and belief, defendants directed and controlled the infringing activities alleged in this Complaint and were and are in a position to benefit economically from the infringement of plaintiffs' intellectual property rights, which they orchestrated.

95.    Upon information and belief, defendants were fully aware of the illegality of their efforts to purchase, import, distribute and sell Pirated Copies and Foreign Editions.

96.     Upon information and belief, defendants have intentionally and deliberately sold an unknown number of Pirated Copies and Foreign Editions through defendant Buckeye's and defendant UBX's physical location and via defendants Buckeye and TRU's internet web sites. In so doing, defendants have intentionally deprived plaintiffs and the authors of the Authentic Works of the profits plaintiffs could have obtained from such sales, and have thereby intentionally thwarted and hindered plaintiffs' abilities to sell to customers in the United States. In so doing, defendants have also knowingly restricted and interfered with plaintiffs' ability to control and exploit their distribution plans throughout the United States. In so doing, defendants also have knowingly infringed plaintiffs' valid registered copyrights and trademarks.

97.     Upon information and belief, defendants' actions were willful, malicious and made in bad faith.

### FIRST CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT
#### (17 U.S.C. §§ 101 *et seq.*)
#### (Against Defendants UBX, TRU and Smyres)

98.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 97 of this Complaint.

99.     The Publishers' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they have been duly registered by plaintiffs with the United States Copyright Office and published by plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

100.    At all relevant times, plaintiffs have been and still are the owners of all rights, title and interest in and to their respective copyrights in the Publishers' Authentic

27

Works, which have never been assigned, licensed or otherwise transferred to any of defendants, nor have such rights in the Publishers' Authentic Works been dedicated to the public.

101.    Upon information and belief, beginning on an unknown date and continuing through the present, defendants UBX, TRU and Smyres, with knowledge of plaintiffs' respective ownership of the Authentic Works, and with knowledge of plaintiffs' duly registered copyrights in the Authentic Works, have infringed plaintiffs' copyrights by, among other things, deliberately importing, purchasing, distributing, and reselling Pirated Copies and Foreign Editions of the Publishers' Authentic Works to the public for profit, without the permission, license or consent of plaintiffs.

102.    Upon information and belief, defendants UBX, TRU and Smyres also have infringed plaintiffs' exclusive rights to reproduce, import, distribute, sell, and to authorize the reproduction, importation, distribution and sale of the copyrighted Authentic Works to the public by sale or other transfer of ownership, by, among other things, importing Pirated and Foreign Editions from Asia, and possibly elsewhere, from manufacturers whose products defendants knew or should have known were unauthorized and illegal, or alternatively, by securing the manufacture of the Pirated Books and by distributing the Pirated Books in the United States, and possibly elsewhere, without the permission, license or consent of plaintiffs.

103.    As a result of defendants UBX, TRU and Smyres' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

104.    Upon information and belief, defendants UBX, TRU and Smyres' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

105.    Plaintiffs are entitled to recover from UBX, TRU and Smyres the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by UBX, TRU and Smyres as a result of their acts of copyright infringement as alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

## SECOND CAUSE OF ACTION
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
(17 U.S.C. §§ 101 *et seq.*)
(Against All Defendants)

106.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 105 of this Complaint.

107.    Upon information and belief, in addition to committing the direct acts of infringement alleged herein, defendants, individually and in concert, directly and intentionally sought out an illegal source of Pirated Copies and Foreign Editions, purchased such Infringing Copies with knowledge of their illegal nature and status, and contributed to the direct infringement of plaintiffs' copyrights by illegally distributing and selling the Infringing Works to consumers, to plaintiffs' detriment.

108.    Upon information and belief, defendants supervised such infringing and illegal activity in violation of plaintiffs' intellectual property rights, and each had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberate, malicious and infringing activity.

109.    Upon information and belief, by engaging in the illegal conduct alleged above, and in addition to directly organizing and effectuating such infringing activities,

29

defendants each also induced, caused, and materially contributed to such infringing conduct.

110.    Upon information and belief, defendants did more than supply the means to facilitate and accomplish the infringement of plaintiffs' copyrights, but rather they also substantially participated in, and deliberately orchestrated such infringing activities to plaintiffs' detriment.

111.    Upon information and belief, defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would damage, violate and infringe plaintiffs' copyrights in the Authentic Works and other works.

112.    Upon information and belief, defendants directed and controlled the infringing activities alleged in this Complaint and were and are in a position to benefit economically from the infringement of plaintiffs' intellectual property rights which they so orchestrated.

113.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

114.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

115.    As a result of defendants' unlawful conduct as set forth above, defendants, in addition to their liability for direct infringement of plaintiffs' copyrights, are jointly and severally liable for contributory infringement of plaintiffs' copyrights and other intellectual property rights.

116.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

**THIRD CAUSE OF ACTION**
**VICARIOUS COPYRIGHT INFRINGEMENT**
(17 U.S.C. §§ 101 *et seq.*)
(Against All Defendants)

117.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 116 of this Complaint.

118.    Upon information and belief, in addition to committing the direct and contributory acts of infringement alleged herein, defendants, individually and in concert, encouraged and facilitated the illegal importation of Foreign Editions and the illegal copying of the Authentic Works in Asia and possibly elsewhere, by purchasing the Infringing Works with knowledge of their nature and status, and then importing, illegally distributing and selling such copies to consumers in the United States and elsewhere, to plaintiffs' detriment.

119.    Upon information and belief, defendants facilitated such infringing and illegal activity in violation of plaintiffs' intellectual property rights, and each had a direct financial interest in, and stood to gain a direct financial benefit from, the deliberate, malicious and infringing activity.

120.    Upon information and belief, by engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities,

31

defendants each also induced, caused, and materially contributed to such infringing conduct.

121.    Upon information and belief, defendants both did more than supply the means to effectuate the infringement of plaintiffs' copyrights, but rather they also substantially participated in, and stood to benefit financially from, such infringing activities to plaintiffs' detriment.

122.    Upon information and belief, defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would damage, violate and infringe plaintiffs' copyrights in the Authentic Works and other works.

123.    Upon information and belief, in addition to organizing, orchestrating and participating in the alleged infringements of plaintiffs' copyrights, defendants also were and are in a position to benefit economically from the infringement of plaintiffs' intellectual property rights which they so orchestrated.

124.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

125.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

126.    As a result of defendants' unlawful conduct as set forth above, both defendants, in addition to their liability for direct and contributory infringement of plaintiffs' copyrights, are jointly and severally liable for vicarious infringement of plaintiffs' copyrights and other intellectual property rights.

127.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

**FOURTH CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT**
**VIOLATION OF IMPORT RIGHT**
(17 U.S.C. § 602)
(Against All Defendants)

128.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 127 of this Complaint.

129.    The Publishers' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and have been duly registered with the United States Copyright Office and respectively published by plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

130.    At all relevant times, plaintiffs have been and still are the owners of all rights, title and interest in and to their respective copyrights in the Authentic Works, which have never been assigned, licensed or otherwise transferred to any of defendants, nor have such rights in the Authentic Works been dedicated to the public.

131.    Upon information and belief, on a date to be determined at trial, defendants deliberately sought out what they knew to be sources of Pirated Copies and Foreign Editions of plaintiffs' merchandise, including such copies of the Authentic Works, with the intention of purchasing the Infringing Works, importing them into the

United States and selling those copies through various mediums, to an unknown number of actual and potential customers in the United States, all without plaintiffs' permission or knowledge.

132.    Upon information and belief, defendants intentionally purchased and imported the Pirated Copies and Foreign Editions into the U.S. for infringing distribution and sale from unauthorized sources which were not licensed manufacturers, distributors or licensees of any of the plaintiffs. Upon information and belief, defendants knew that the sources of the Pirated Copies and Foreign Editions were not authorized manufacturers, distributors or licensees of plaintiffs.

133.    Upon information and belief, defendants imported Pirated Copies and Foreign Editions of plaintiffs' Authentic Works, from Asia and possibly elsewhere, into the United States with the intention and purpose of distributing and selling such Infringing Works in the United States and elsewhere, in violation of plaintiffs' exclusive rights to import and distribute their works pursuant to 17 U.S.C. § 602.

134.    Upon information and belief, from the commencement of their relationships with plaintiffs, and continuing through to the present, defendants, with knowledge of plaintiffs' respective ownership of the Authentic Works, and with knowledge of plaintiffs' duly registered copyrights in the Authentic Works, have infringed plaintiff's import rights by, among other things, deliberately purchasing, importing, distributing, and reselling the Pirated Copies and Foreign Editions, without the permission, license or consent of the plaintiffs.

135.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

136.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

137.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.


### FIFTH CAUSE OF ACTION
### TRADEMARK INFRINGEMENT
(15 U.S.C. § 1114)
(Against Defendants UBX, TRU and Smyres)

138.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 137 of this Complaint.

139.    Thomson is the owner and registrar of the distinctive word mark "Thomson Learning," and the distinctive arbitrary design marks "ITP" and "PWS," Pearson is the owner and registrar of the distinctive word mark "Pearson," Wiley is the owner and registrar of the distinctive word mark "Wiley," and arbitrary design mark "JW," And McGraw-Hill is the owner and registrar of the distinctive word marks "McGraw-Hill" and "The McGraw-Hill Companies."

140.    Plaintiffs and defendants UBX, TRU and Smyres compete or intend to compete within the same markets.

141.    Through countless years of use and selective publicity throughout the world, the distinctive trademarks of the plaintiffs have attained secondary meaning in the

35

relevant markets, becoming among the most well-known trademarks in the world. Plaintiffs have established strong reputations and substantial goodwill by reason of the success and reputation goods sold under their trademarks, immediately indicating to the public that products and services featuring such marks come from, or are sponsored or approved by plaintiffs.

142.    Upon information and belief, defendants UBX, TRU and Smyres have been using, and continue to use, plaintiffs' trademarks in commerce, in connection with their sale and distribution of Pirated Copies and Foreign Editions of plaintiffs' Authentic Works.

143.    Plaintiffs' Foreign Editions are of a materially different quality than their respective standard U.S. editions, in that they are of inferior quality (as described above) and are not intended for sale and distribution in the United States.

144.    Plaintiffs' trademarks are substantially similar to the counterfeit trademarks used by defendants UBX, TRU and Smyres in connection with the Pirated Copies and Foreign Editions.

145.    By committing the acts alleged herein, defendants UBX, TRU and Smyres intended to, and did, use, and capitalize upon, plaintiffs' distinctive and powerful trademarks in connection with their purchase, use, importation, distribution, sale, and the offering for sale, of the Pirated Copies and Foreign Editions of plaintiffs' Authentic Works.

146.    Upon information and belief, the circulation of the Pirated Copies and Foreign Editions in interstate and international commerce has caused confusion among

plaintiffs' actual and potential customers, affiliates and other professional and individual entities or persons with which plaintiffs share professional relationships and associations.

147.    The circulation of the Pirated Copies and Foreign Editions in interstate and international commerce is highly likely to cause confusion among consumers as to the source of the Infringing Works.

148.    Upon information and belief, defendants UBX, TRU and Smyres have received substantial revenues and substantial profits arising out of the unauthorized use and exploitation of plaintiffs' trademarks to which they are not entitled, and plaintiffs have also suffered damages as a result of defendants' UBX, TRU and Smyres use of plaintiffs' trademarks, for which defendants UBX, TRU and Smyres are responsible.

149.    Defendants' UBX, TRU and Smyres actions constitute an infringement of plaintiffs' respective trademark rights under 15 U.S.C. § 1114.

## SIXTH CAUSE OF ACTION
## FALSE ADVERTISING/UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))
### (Against Defendants UBX, TRU and Smyres)

150.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 149 of this Complaint.

151.    By using, importing, distributing, offering for sale and selling Pirated Copies and Foreign Editions of plaintiffs' Authentic Works, defendants UBX, TRU and Smyres have willfully used false designations of origin in commerce in order to cause confusion as to the origin, sponsorship, and/or approval of the Pirated Copies and Foreign Editions of plaintiffs' Authentic Works.

152.    Plaintiffs' respective trademarks, including the distinctive word mark "Thomson Learning," and the distinctive arbitrary design marks "ITP" and "PWS," the distinctive word mark "Pearson," the distinctive word mark "Wiley," and arbitrary design mark "JW," and the distinctive word marks "McGraw-Hill" and "The McGraw-Hill Companies," as reflected throughout plaintiffs' respective Authentic Works, are not functional elements of their respective textbooks, but rather are distinctive word marks and arbitrary and fanciful designs, deserving of the strongest protection under the Lanham Act.

153.    Defendants' UBX, TRU and Smyres circulation of the Pirated Copies and Foreign Editions, which falsely designate their source or origin, in interstate and international commerce, has deceived, and is highly likely to continue to deceive, consumers concerning the true source of the Infringing Works.

154.    Plaintiffs' Foreign Editions are of a materially different quality than their respective standard U.S. editions, in that they are of inferior quality (as described above) and are not intended for sale and distribution in the United States.

155.    The circulation of the Infringing Works in interstate and international commerce is highly likely to cause confusion among consumers as to the source of the Infringing Works.

156.    Plaintiffs have suffered irreparable commercial and reputational injury as a result of the false designation of origin of the Infringing Works.

157.    Defendants' UBX, TRU and Smyres acts of infringement have been committed in the Southern District of New York, within the jurisdiction of this Court, and elsewhere.

38

## SEVENTH CAUSE OF ACTION
### TRADEMARK DILUTION
(15 U.S.C. § 1125(c))
(Against Defendants UBX, TRU and Smyres)

158.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 157 of this Complaint.

159.    Plaintiffs' respective trademarks, including the distinctive word mark "Thomson Learning," and the distinctive arbitrary design marks "ITP" and "PWS," the distinctive word mark "Pearson," the distinctive word mark "Wiley," and arbitrary design mark "JW," and the distinctive word marks "McGraw-Hill" and "The McGraw-Hill Companies," as reflected throughout plaintiffs' respective Authentic Works, are not functional elements of their respective textbooks, but rather are distinctive word marks and arbitrary and fanciful designs, deserving of the strongest protection under the Lanham Act.

160.    The plaintiffs' respective trademarks are famous, and they are, and have been for many years, widely recognized by the general consuming public as being associated with the respective Publishers.

161.    By selling the Pirated Copies and Foreign Editions throughout the United States and possibly elsewhere, defendants UBX, TRU and Smyres are using plaintiffs' famous and distinctive trademarks in interstate commerce for a commercial purpose.

162.    Plaintiffs' Foreign Editions are of a materially different quality than their respective standard U.S. editions, in that they are of inferior quality (as described above) and are not intended for sale and distribution in the United States.

39

163.    Defendants UBX, TRU and Smyres began using the infringing marks well after plaintiffs' marks had become famous.

164.    Defendants UBX, TRU and Smyres are willfully using plaintiffs' trademarks to profit from their reputation and are thereby causing plaintiffs' trademarks to become less distinctive.

165.    Defendants' UBX, TRU and Smyres use of the plaintiffs' trademarks on the Infringing Works tarnishes the reputation of the plaintiffs' respective marks, as they are of a lesser quality than that which consumers expect from products bearing plaintiffs' respective trademarks.

166.    Defendants' UBX, TRU and Smyres use of the plaintiffs' trademarks lessens plaintiffs' capacity to identify only products authorized by, sponsored by, or somehow affiliated with their respective trademarks.


## EIGHTH CAUSE OF ACTION
## TRAFFICKING IN COUNTERFEIT
## DOCUMENTATION OR LABELS
### (18 U.S.C.S. § 2318)
### (Against All Defendants)

167.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 166 of this Complaint.

168.    Defendants have knowingly and willfully trafficked into the United States counterfeit documentation and labels affixed to literary works in the form of the Pirated Copies.

169.    Defendants knowingly used the United States mail/postal service or a facility of interstate or foreign commerce to traffic in counterfeit documentation and labels affixed to the Pirated Copies.

170.    Upon information and belief, defendants have been using counterfeit labels or counterfeited documentation or packaging, and continue to use counterfeits of plaintiffs' copyrighted label, documentation, and packaging in commerce, in connection with their sale and distribution of counterfeit textbooks, including the Pirated Copies of the Authentic Works of plaintiffs Thomson, Pearson and Wiley.

171.    Thomson's, Pearson's and Wiley's labels, documentation and packaging, which are registered with the United States Copyright Office and the United States Patent and Trademark Office, are substantially similar to the counterfeit labels, documentation and packaging used by defendants in connection with the Pirated Copies, and appear to be genuine, but are not.

172.    Thomson, Pearson and Wiley are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their violation of 18 U.S.C.S. § 2318 as alleged above, or statutory damages as provided in 18 U.S.C.S. § 2318. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

## NINTH CAUSE OF ACTION
### ILLEGAL IMPORTATION OF GOODS BEARING INFRINGING UNITED STATES TRADEMARKS OR NAMES
(15 U.S.C.S. § 1124 and 19 U.S.C.S. § 1526)
(Against All Defendants)

173.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 172 of this Complaint.

174.    Defendants knowingly imported Pirated Copies, of foreign manufacture, of the Authorized Works, which imitate the name of Thomson's, Pearson's and Wiley's manufacturer and copy those plaintiffs' Authorized Works, including their trademarks, which are registered with the United States Copyright Office and the United States Patent and Trademark Office respectively.

175.    By importing Pirated Copies of Thomson's, Pearson's and Wiley's Authorized Works, defendants have willfully used counterfeit trademarks which cause confusion as to the origin, sponsorship, and/or approval of the Pirated Copies, and which are calculated to induce the public to believe that the Pirated Copies were authentically manufactured in the United States.

176.    Defendants also knowingly imported Foreign Editions of plaintiffs' Authentic Works, bearing plaintiffs' trademarks, which are registered with the United States Patent and Trademark Office, without plaintiffs' consent.

177.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their violation of 15 U.S.C.S. §§ 1124 and 19 U.S.C.S. § 1526, as alleged above.  At present, the amount of such damages, gains, profits, and

42

advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

### TENTH CAUSE OF ACTION
### COMMON LAW FRAUD
(Against Defendants UBX and Smyres)

178.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 177 of this Complaint.

179.    At the time of making its return to Thomson on April 16, 2007, defendants UBX and Smyres made a material, false representation by returning Pirated Copies of Thomson's Authentic Works, passing them off as Authentic Works originally purchased by defendants from the plaintiffs, for a full refund.

180.    Upon information and belief, defendant Smyres, as principal of UBX, personally orchestrated and pursued the return efforts of UBX, and therefore personally orchestrated and pursued the fraud alleged herein.

181.    Upon information and belief, defendants UBX and Smyres sent, as purported returns, Pirated Copies of at least some of plaintiffs' Authentic Works, passing them off as the true and original Authentic Works sent to defendants by the plaintiffs, with knowledge that the Pirated Copies were not plaintiff's Authentic Works.

182.    Defendants UBX and Smyres, by knowingly and deliberately returning Pirated Copies of plaintiffs' Authentic Works, acted with the intent to defraud the plaintiffs.

183.    Plaintiffs reasonably relied upon the misrepresentations of defendants UBX and Buckeye to their detriment.

184.   On May 3, 2007, Plaintiff Thomson suffered damages by refunding UBX the full monetary value for what they reasonably believed to be their Authentic Works but which were in fact Pirated Copies of their Authentic Works.

185.   Defendants engaged in gross, wanton, and willful fraud, such that an award of punitive damages is appropriate.


WHEREFORE, plaintiffs Thomson, Pearson, Wiley and McGraw-Hill demand that judgment be entered against defendants as follows:

(1)   That defendants be required to account for and pay over to plaintiffs all gains, profits, and advantages realized from their unlawful conduct;

(2)   That defendants be required to pay to plaintiffs such damages as plaintiffs have sustained as a consequence of defendants' unlawful acts as alleged above, including actual damages or statutory damages, at plaintiffs' election, pursuant to 17 U.S.C. § 504;

(3)   That defendants be required to pay to plaintiffs such damages as plaintiffs have sustained as a consequence of defendants' unlawful acts as alleged above, including statutory damages or multiple damages in the amount of three times the damages sustained by plaintiffs, pursuant to 15 U.S.C. § 1117;

(4)   That defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, plaintiffs' respective marks pursuant to 15 U.S.C. § 1118;

(5)   That defendants be required to pay actual damages and profits or statutory damages, at plaintiffs' election, pursuant to 18 U.S.C. § 2318;

44

(6)    That defendants be required to pay exemplary and punitive damages as the Court finds appropriate to deter any future willful and fraudulent conduct;

(7)    That defendants be preliminarily and permanently enjoined from further infringing upon the plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

(8)    That defendants be preliminarily and permanently enjoined from further infringing upon the plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

(9)    That defendants be required to pay profits, damages, costs, and attorney fees in connection with this action;

(10)    That final judgment be entered in favor of plaintiffs and against defendants; and

(11)    That plaintiffs be granted such other and further relief as this Court deems just and proper.

Dated: New York, New York
        October 2, 2007

SMITH DORNAN DEHN PC

By: _____

Aaron Georghiades, Esq. (AG8110)
Attorneys for Plaintiffs
Cengage Learning, Inc., Pearson
Education, Inc., John Wiley & Sons,
Inc., and The McGraw-Hill
Companies

110 East 42nd Street, Suite 1303
New York, New York 10017
Phone: (212) 370-5316
Facsimile: (212) 370-5317
E-mail:ageorghiades@sddlaw.com

45

EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CENGAGE LEARNING, INC.                    :
(f/k/a THOMSON LEARNING, INC.)            :
PEARSON EDUCATION, INC.                   :
JOHN WILEY & SONS, INC., and              :
THE MCGRAW-HILL COMPANIES, INC,           :
                                          :
                        Plaintiffs,       :     **AFFIDAVIT OF RICHARD**
                                          :     **ESSIG**
                                          :
            -against-                     :     07 Civ 8540 (CM)(THK)
                                          :
                                          :
                                          :
BUCKEYE BOOKS,                            :
USED BOOK EXCHANGE,                       :
TEXTBOOKSRUS.COM., LLC, and               :
PHILIP SMYRES,                            :
                        Defendants.       :
                                          :
------------------------------------------------------------x

RICHARD ESSIG, being duly sworn, deposes and states as follows:

1.      I am the Vice President of Planning & Logistics of the Higher Education,

International and Professional Group of Pearson Education, Inc. ("Pearson"), and I write this

affidavit in support of plaintiffs' opposition to defendants' motion to dismiss for lack of personal

jurisdiction. I have held the above title for approximately ten years.

2.      Unless otherwise stated, the matters affirmed herein are within my personal

knowledge and are true, or are based on documents or information from Pearson, in which case I

believe them to be true.

3.      Used Book Exchange ("UBX") and Buckeye Books ("Buckeye"), through Philip

Smyres ("Smyres"), have been customers of Pearson since 1995 and 1996 respectively. I also

understand that they are customers of the other plaintiffs in this lawsuit- John Wiley & Sons,

Inc., Cengage Learning, Inc., and The McGraw-Hill Companies, Inc. Smyres is listed as the

owner and primary contact person of UBX and Buckeye according to Pearson's customer records. In addition to his control over UBX and Buckeye, Smyres also owns and operates an e-commerce company called Textbooksrus.com, LLC ("TRU"), which sells textbooks over the internet, apparently to consumers all across the United States. TRU has never been one of Pearson's customers. He also apparently runs and/or operates a business incorporated in New York which I describe in greater detail below.

4.     In 2006, Pearson and some of the other plaintiffs in this lawsuit began to suspect that Smyres, through his companies, UBX, Buckeye, and TRU (collectively, the "defendants"), was unlawfully selling international edition (gray market) textbooks, and other unauthorized, including pirated textbooks. One of the facts that led to this conclusion was TRU's advertisement of its sales of gray market textbooks on its website. A copy of the relevant portion of the TRU website advertising the company's sales of gray market textbooks is attached hereto as Exhibit "A."

5.     To investigate the possibility of pirated Pearson books being sold by Smyres and his e-commerce company, on September 20, 2006, I placed an order on the TRU e-commerce website for four separate titles from TRU and Philip Smyres (for a detailed account of the names of those titles and their copyright registration details, I respectfully refer this Court to paragraphs 45 and 46 of the Complaint). Copies of those titles were delivered to an address in New Jersey on September 23, 2006, and upon Pearson's analysis of the books that Smyres and TRU delivered, Pearson determined that the books were all pirated (i.e. counterfeit) versions of those titles, with the exception of the *Assessment Procedures for Counselors and Helping Professionals* title, which Pearson determined to be the only legitimate copy that TRU delivered.

6.      To investigate the possibility of gray market Pearson books being sold by Smyres

and his e-commerce company, TRU, on August 3, 2007, I placed an order on Smyres' and

TRU's e-commerce website for three separately copyrighted titles: 1) *Organizational Behavior,*

2) *Microeconomics,* and 3) *Transport Processes and Separation Process Principles* (for a

detailed account of the names of those titles and their copyright registration details, I respectfully

refer this Court to paragraphs 47-49 of the Complaint). On August 8, 2007, copies of those titles

were delivered to an address in New York (1767 Central Park Avenue, Suite 241, Yonkers, New

York 10710), and upon Pearson's analysis of the books that Smyres and TRU delivered, Pearson

determined that the books were all international edition (i.e. gray market) editions of the those

titles.  When I further inspected the copies of the above titles that TRU delivered, I discovered

that Smyres and TRU had placed stickers bearing the name "Textbooks R Us" over the clearly

printed territorial distribution restrictions on the books, thus disguising those sales restrictions

from consumers.  The place of manufacture of the above titles was also misrepresented and

concealed by a false laser printed bar code that was placed over the Asian ISBN and bar code,

along with a deceptive U.S. ISBN, which were actually the ISBNs assigned to the US editions of

those works.  Essentially, the books were made to appear to be legitimate U.S. editions of the

books I ordered, when in fact they were low-cost international editions, not intended for sale in

the United States.  Copies of the shipping labels corresponding to the above transactions,

reflecting that the books were delivered to an address in New York are attached hereto as Exhibit

"B."

7.      As part of Pearson's efforts to trace and investigate the illegal importations of

pirated and international textbooks into the United States, Pearson subscribed to the services of

PIERS, an import/trade data-provision company that provides comprehensive data on international trade. Pearson's records under that subscription date back to February 2006.

8.      Pearson's review of those reports show that Smyres and the other defendants in this action have imported at least sixty-six (66) large shipments of textbooks into the United States from countries in Asia which Pearson has found to be the source of many pirated and gray market textbooks currently being sold on the U.S. market. Other important facts that can be gleaned from the PIERS reports are:

        a)      Of the shipments listed on the reports, Smyres, Buckeye Books and TRU were listed as the consignees on the sixty-six shipments.

        b)      Many of the consignors are companies that Pearson knows to have engaged in acts of textbook piracy, and the distribution and exportation of pirated and gray market textbooks.

        c)      Smyres often traveled to Asia and imported textbooks into the United States personally as consignor.

        d)      Many of the deliveries were made to Smyres as the consignee at "2340 Wood Avenue, Columbus, Ohio 43212"- which is the same address as TRU.

        e)      With respect to one shipment from the Educational Media Centre in India, Smyres is listed as the consignee, along with Buckeye and TRU. The address for both TRU and Buckeye is again listed as the same address as that of TRU- 2340 Wood Avenue, Columbus, Ohio 43212.

9.      Most importantly, the PIERS reports reflect that Smyres, Buckeye Books and TRU make heavy and regular use of New York seaports when shipping illegal textbooks into the United States. The reports show that Smyres, Buckeye and TRU imported as many as ten (10)

shipments into New York seaports between late February 2007 to June 2007 alone, en route to

Ohio, mostly delivered to TRU's 2340 Wood Avenue address. Those ten shipments amounted to

approximately 27,940 kilograms, or nearly 7,000 kilograms per month, which equates to

approximately 28,000 books imported into New York over a four month period. This is

especially surprising given that Smyres, Buckeye and UBX are customers of Pearson and the

other plaintiffs, and should have no need to purchase their stock from such dubious sources.

Copies of the relevant portions of the above-referenced PIERS reports are attached hereto as

Exhibit "C."

     10.     One of the ten shipments into New York is consigned to a company called

BookDogBooks, LLC ("BDB"). BDB's address, according to the PIERS reports, is the same as

TRU, and further investigation has found that Philip Smyres, UBX and TRU are the owners and

registrants of BDB and its website.  Copies of BDB's company and website registration

information, as listed on the Ohio Secretary of State website and on GoDaddy.com, which

reflects that TRU and Smyres are the registrants of BDB and its website, are attached hereto as

Exhibit "D."

     11.     Since the defendants filed their motion to dismiss in this action, I have since

discovered that UBX, Smyres and TRU own and operate a textbook sales company in New

York- another fact involving the State of New York that I understand defendants have not

mentioned to this Court.  The facts relating to that discovery are as follows:

     12.     In September 2006, one of Pearson's field representatives entered a small store on

Lexington Avenue in New York City, near Baruch College. The storefront advertised the sale of

books at up to 50% off. The Pearson field representative reported to me that the store, which was

called Textbooksdepot L&M, Inc., ("Textbooksdepot") was selling international edition

textbooks and what appeared to be brand new US edition textbooks, at a suspiciously low price. Soon thereafter, another Pearson field representative learned that Textbooksdepot was headquartered in Queens County, New York, with a street address in Queens, New York, trading as Textbooksdepot L&M, Inc.

13.     When defendants filed their motion to dismiss, I investigated Textbooksdepot's website, www.textbooksdepot.com, and discovered that <u>TRU controls that New York-based company</u>, as it clearly states on the site, "Textbooksrus.com reserves the right to refuse service to anyone." It also states that "Textbooksdepot.com and Customer consent to the exclusive jurisdiction and the venue of the State Courts of the State of New York to resolve any dispute between them related hereto, and the parities waive all rights to contest this exclusive jurisdiction and venue of such Courts." Further review of the Textbooksdepot website and other details about Textbooksdepot reflect that the business offers books tailored to students' curriculums at Baruch College and Pace University in New York, <u>and that it is owned by Smyres and TRU</u> (as described above).  Copies of the relevant portions of the Textbooksdepot website, and other materials showing that the company is incorporated in the State of New York, owned by TRU and Smyres, and that it is actively recruiting in New York, are attached hereto as Exhibit "E."

14.     After a thorough review of the orders I placed on Pearson's behalf, and the other facts of this case, including the PIERS evidence of the numerous shipments in to New York seaports, and the evidence surrounding Textbooksdepot in New York, it is clear that defendants are using New York as an essential hub for their illegal textbook piracy activities.

RICHARD ESSIG

Sworn to before me this the
7ᵗʰ day of November, 2007

NOTARY PUBLIC

ELLEN M. MORRISON
Notary Public, State of New Jersey
No. 2298335
Qualified in Bergen County
Commission Expires March 26, 2008

# EXHIBIT A

# Textbooks Rus

SEARCH: All Products

Home    Search    Browse    Books    Textbooks    Sell Books    DVD

GO    ADVANCED SEARCH

🛒 VIEW CART | MY ACCOUNT | ORDER STATUS | RETURNS | HELP

We proudly ship to APO and FPO addresses

New to Google Checkout? Try it today

CLICK FOR MORE INFO

Home >> International Edition Store >> What's an International Edition Textbook?

- **Q: What's an International Edition Textbook?**
  A: An International Edition Textbook is simply the international counterpart to a US Edition. Most international editions have slightly different covers and many have different ISBNs on the outside covers (although some have the same ISBN as the US edition on the inside). These books were originally created to be sold in different regions, such as England. International edition textbooks have *the same pagination and contents as the US Edition.* All units and problem sets are guaranteed to be the same, or your money back!

- **Q: Why are International Edition Textbooks so much cheaper?**
  A: Just like prescription medicine, textbooks are much cheaper overseas than in the US. TextbooksRus.com gets a hold of these books and passes the savings on to you!

- **Q: Wait a minute, is it legal to buy International Edition Textbooks?**
  A: Yes! Textbook publishers would love to have people think otherwise, but courts have time and again asserted your right to purchase international editions. Still unsure? The United States Supreme Court recently ruled on this issue. You can find a New York Times article about their decision here.

- **Q: Why do you sell International Edition Textbooks?**
  A: Disgruntlement over textbook costs has been growing in the United States as prices have risen. As veterans of the textbook industry, we've seen a massive increase in demand for both used textbooks and especially international edition textbooks by students who are tired of paying $95.00 for an economics book or $140.00 for a chemistry book. They're happier buying the same book for $50.00 in an international edition.

- **Q: Do you buyback International Edition Textbooks?**
  A: Yes! Just visit our buyback page at the end of your quarter or semester, type in the ISBN of your book and select the international edition copy. We buyback all types of books everyday, and we even pay for your shipping.

- **Q: What about CD-ROM's and online access codes? Do International Editions come with these?**
  A: In most cases, yes. In rare cases, the CD may not be included. If the CD is not included with the book, this will be made clear on the product detail page. If you are sure you're going to need the CD-ROM to complete your class and want to make sure the book includes it, drop us an email at help@textbooksrus.com to make sure. Most professors do not require these materials, since many used books do not come with them.

- **Q: This all sounds great, but I'm still not sure because I've never bought an International Edition Textbook before.**
  No problem, we've prepared some side by side comparisons of the US editions and International Editions. Check them out below!

**All our International Edition Textbooks are printed on high quality paper**

http://www.textbooksrus.com/books/information/ieinformation.aspx

What's an International Edition Textbook?



Some display an "International Edition" label.

All page numbers and problem sets are guaranteed to be EXACTLY the same as the US edition--or your money back! If you are unsatisfied with your book for any reason, you may return it for a 100% refund

http://www.textbooksrus.com/books/information/ieinformation.aspx

# What's an International Edition Textbook?

International Edition

US Edition

In some cases, the book is EXACTLY identical in all respects to the US Edition, except for the word "International" printed at the bottom (see at left, "McGRAW-HILL INTERNATIONAL")



Need help? help@textbooksrus.com

Home >>

<< Back

Copyright 2002-2006 TextbooksRus.com

Frequently Asked Questions | Contact Us | Policies | Privacy Information | Bulk Sales | Affiliates | Marketplace | Jobs








# EXHIBIT B



TextbooksRus.com
2340 Wood Ave
Columbus, OH
43221

TO:
Frieda Lee
1767 Central Park Avenue
Box 241
Yonkers, NY 10710

Invoice:
Customer:                    Dept:

**TextbooksRus.com**

( 9612804 )    6604604    10232044
**804**

**HOME**            **FedEx**
                    Home Delivery

**1**
of
**1**

EPDI  EPDI  EPDI  EPDI  EPDI  EPDI  EPDI  EPDI  EPDI  EPDI
                    TRCK: 660460410232044
            FEDEX GROUND HOME PPD
            Date  08/06/2007      Shipping  5.34
            Weight  9.4           Special  2.17
            COD                   Handling  0.0
            DV  50.00             Total  7.51