UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                        :
CENGAGE LEARNING INC.                                   :
(f/k/a THOMSON LEARNING INC.)                           :    07 Civ. 8540 (CM)(THK)
PEARSON EDUCATION, INC.                                 :
JOHN WILEY & SONS, INC., AND                            :    ECF CASE
THE MCGRAW-HILL COMPANIES, INC.                         :
                                                        :
                                      Plaintiffs,       :
                                                        :
              - against -                               :
                                                        :
BUCKEYE BOOKS,                                          :
USED BOOK EXCHANGE                                       :
TEXTBOOKSRUS.COM, LLC, AND                              :
PHILIP SMYRES,                                          :
                                                        :
                                      Defendant.        :
                                                        :
-------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................2

STATEMENT OF FACTS.....................................................................3

LEGAL STANDARD........................................................................7

    A. Burden of Proof........................................................................7

    B. Applicable standard on a 12(b) Motion............................................8

ARGUMENT................................................................................9

    POINT 1

    EXERCISING PERSONAL JURISDICTION CONFORMS
    WITH THE REQUIREMENTS OF CONSTITUTIONAL
    DUE PROCESS............................................................................9

        B. The Exercise of Personal Jurisdiction Here is Reasonable............10

    POINT II

    THIS COURT HAS GENERAL JURISDICTION OVER
    DEFENDANTS SMYRES AND TRU UNDER CPLR 301......................13

        i. Importation of Books to New York Ports..............................14

        ii. Continuous and Systematic Solicitation of, and Sales to,
        New York Consumers Through E-Commerce Websites
        and New York Retail Companies.......................................15

    POINT III

    DEFENDANTS TRU AND SMYRES ARE SUBJECT
    TO SPECIFIC JURISDICTION UNDER CPLR 302.............................16

NEWYORK_MIDTOWN\647830\1

i

A. Defendants TRU and Smyres are Subject to Specific Jurisdiction By Transacting Business Within This State and Contracting to Supply Goods in New York Under CPLR § 302(a)(3)(1)......................................................16

B. Defendants TRU and Smyres Are Subject To Personal Jurisdiction Resulting From Committing A Tortious Act Outside of New York Pursuant to CPLR § 302(a)(3)(ii).........17

i. Plaintiffs' Injuries Occurred in New York in Satisfaction of the Situs of Injury Test (Third Prong)....................................19

ii. Defendants Smyres and TRU Expected or Should Reasonably Have Expected Their Acts to Have Consequences in New York (Fourth Prong)...............................................................19

iii. Defendant TRU Derives Substantial Revenue from Interstate Commerce (Fifth Prong)....................................................20

POINT IV

THIS COURT HAS SPECIFIC JURISDICTION OVER SMYRES BECAUSE HE OWNS TRU AND SUPERVISED AND BENEFITED FROM TRU'S ACTS.................................................21

POINT V

PLAINTIFFS ARE ENTITLED TO DISCOVERY ON PERSONAL JURISDICTION ISSUES.......................................23

CONCLUSION......................................................................25

TABLE OF AUTHORITIES

CASES

*A.I. Trade Fin., Inc. v. Petra Bank*
  989 F.2d 76, 79-80 (2d. Cir. 1993)..........................................................8

*Aquascatum v. S.S. American Champion*
  426 F.2d 205, 211-212 (2d. Cir. 1970)....................................................16

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*
  902 F.2d 194, 197 (2d Cir. 1990) ............................................................7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*
  305 F.3d 120, 129-130 (2d Cir. 2002)................................................10, 12

*Basquiat v. Kemper Snowboards*
  1997 U.S. Dist. LEXIS 12653 (S.D.N.Y. Aug. 25, 1997)...........................22

*Bensusan Rest. Corp. v. King*
  126 F.3d 25, 27 (2d Cir. 1997)............................................................8,9

*Boris v. Bock Water Heaters, Inc.*
  3 Misc. 3d 835, 840-41; 775 N.Y.S.2d 452; 457 (N.Y.Sup.Ct.2004)..........12, 23, 24

*Bryant v. Finnish Nat'l Airline*
  15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965)..........................16

*Burger King Corp. v. Rudvewicz*
  471 U.S. 462, 475, 105 S.Ct. 2174 (1985)..............................................8

*Burger King Corp. v. Rudzewicz*
  471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).....................9

*Business Trends Analysts v. Freedonia Group, Inc.*
  650 F.Supp. 1452, 1455-56 (S.D.N.Y. 1987).........................................8, 16

*Caruolo v. John Crane, Inc.*
  226 F.3d 46, 58 (2d Cir. 2000)............................................................19

*Craig v. First Web Bill, Inc.*
  2004 U.S. Dist. LEXIS 27432 at *34-37 (E.D.N.Y. Nov. 29, 2004).............21, 22

*Credit Lyonnais Sec., Inc. v. Alcantara*
  183 F.3d 151, 153 (2d Cir. 1999)..........................................................23

*Cutco Indus., Inc. v. Naughton*
  806 F.2d 361, 365 (2d Cir. 1986)..........................................................8

340090.1

iii

*DiStefano v. Carozzi N. Am., Inc.*
   286 F.3d 81, 84-85 (2d Cir. 2001).............................................................19

*Elish v. St. Louis S. W. Ry.*
   305 N.Y. 267, 112 N.E.2d 842 (1953) .....................................................16

*Fantis Foods, Inc. v. Standard Importing Co.*
   49 N.Y.2d 317, 327 n.4 (1980)........................................................19, 20

*Fashion Fragrance & Cosmetics v. Croddick*
   2003 U.S. Dist. LEXIS 2220, at *7 (S.D.N.Y. Feb. 11, 2003)......................13

*Hanson v. Denckla*
   357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958) .............9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
   466 U.S. 408, 416, 104 S.Ct. 1868 (1984) ...............................................8

*Heritage House Frame & Moulding Co. v. Boyce Highlands Furniture Co.*
   88 F.R.D. 172, 173 (E.D.N.Y1980)...........................................................17

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*
   763 F.2d 55, 58 (2d Cir. 1985) ...............................................................13

*Honda Assocs., Inc. v. NozawaTrading, Inc.*
   374 F.Supp. 886, 888-89 (S.D.N.Y. 1974)................................................17

*Ingraham v. Carroll*
   90 N.Y.2d 592, 599 (1997)....................................................................20

*In re DES Cases*
   789 F.Supp. 552, 570 (E.D.N.Y. 1992) ...................................................19

*International Shoe Co. v. Washington*
   326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)...........................9

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*
   131 F. Supp. 2d 544, 547-48 (S.D.N.Y. 2001)......................................8, 13

*Kernan v. Kurz-Hastings, Inc.*
   175 F.3d 236 (2d Cir. 1999)...................................................................20

*Kinetic Instruments, Inc. v. Lares*
   802 F. Supp. 976, 982 (S.D.N.Y. 1992).....................................................22

*Kreutter v. McFadden Oil Corp.*
   71 N.Y.2d 460, 467, 471-472; 527 N.Y.S.2d 195, 198-99; 522 N.E.2d 40, 42-44 , 47
   (1988).................................................................................16, 20, 21

iv

*LaMarca v. Pak-Mor Mfg. Co.*
   95 N.Y.2d 210, 215, 219; 735 N.E.2d 883, 889; 713 N.Y.S.2d 304, 310
   (2000)..............................................................................12, 18, 20, 21

*Laufer v. Ostrow*
   55 N.Y.2d 305, 310; 449 N.Y.S.2d 456, 459; 434 N.E.2d 692, 694-695 (1982) ...13,15

*Marine Midland Bank, N.A. v. Miller*
   664 F.2d 899, 904 (2d Cir. 1981).............................................................23

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*
   84 F.3d 560, 567, 574 (2d Cir. 1996) ....................................................7, 11

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*
   84 F.3d 560, 567 (2d. Cir. 1996), *cert denied* 519 U.S. 1006 (1996).....................8

*Metropa Co. v. Choi*
   458 F.Supp. 1052, 1054 (S.D.N.Y. 1978).................................................17

*Milliken v. Meyer*
   311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)...........................................9

*Montalbano v. Easco Hand Tools, Inc.*
   766 F.2d 737, 742 (2d Cir.1985).............................................................9

*Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*
   319 F. Supp. 2d 352, 366 (S.D.N.Y. 2004)...............................................12

*Newbro v. Freed*
   2004 WL 691392 at *3 (S.D.N.Y. Mar. 31, 2004)...........................................23

*Peterson v. Spartan Industries, Inc.*
   33 N.Y.2d 463, 310 N.E.2d 513, 354 N.Y.S.2d 905 (1974).............................23

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*
   244 F. Supp. 2d 289, 329 (S.D.N.Y. 2003)...............................................23

*Purdue Pharma L.P. v. Impax Laboratories, Inc.*
   2003 U.S. Dist. LEXIS 15428 (S.D.N.Y. September 4, 2003).........................15

*Retail Software Services, Inc. v. Lashlee*
   854 F.2d 18, 22, 24 (2d Cir. 1988)......................................................11, 21, 22

*Schaadt v. T.W.Kutter, Inc.*
   169 A.D.2d 969; 564 N.Y.S. 2d 865, 866 (3rd Dept. 1991)..............................20

*Tauza v. Susquehanna Coal Co.*

v

340090.1

220 N.Y. 259, 267; 115 N.E. 915, 917 (1917)..............................................13

*United States v. First Nat'l City Bank*
   379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965) ......................8

*Wiwa v. Royal Dutch Petroleum Co.*
   226 F.3d 88, 99 (2d Cir. 2000).....................................................................11

*World-Wide Volkswagen,*
   444 U.S. at 297, 100 S.Ct. 559, 567; 62 L.Ed.2d 490 (1980)...................9

## STATUTES

CPLR § 301...............................................................................8, 9, 14, 15, 16

CPLR § 302......................................................................................8, 9, 21, 22

CPLR § 302(a).......................................................................................17

CPLR § 302(a)(3)...............................................................................17, 18, 19

CPLR § 302(a)(3)(1) ..............................................................................16

CPLR § 302(a)(3)(i) ..........................................................................16, 17

CPLR § 302(a)(3)(ii) ......................................................................18, 19, 20, 21

## MISCELLANEOUS

*D. Siegal, New York Practice § 82 at 90-91*..............................................15-16

*Report of the Administrative Board of the Judicial Conference of the State of New York
   for the Judicial Year July 1, 1965 through June 30, 1966,* Legislative Doc. No. 90
   (1967)................................................................................................20

340090.1

## PRELIMINARY STATEMENT

Plaintiffs Cengage Learning, Inc., Pearson Education, Inc., John Wiley & Sons, Inc. and The McGraw-Hill Companies, Inc. (hereafter "Publishers" or "Plaintiffs") seek to remedy Defendants' Philip Smyres ("Smyres"), Buckeye Books ("Buckeye"), Used Book Exchange ("UBX") and Textbooksrus.com ("TRU") willful copyright infringement. Instead of addressing the merits, Defendants challenge this Court's jurisdiction by denying sufficient contact with New York. In fact, Smyres and TRU sold pirated and gray market textbooks to Publishers online; Smyres, and TRU own or operate a textbook retail company that is incorporated in New York through which they do business; Smyres and TRU do business through a third party textbook retail business also incorporated in New York; and all the Defendants regularly import thousands of illegal textbooks into New York seaports, and transport illegal text books through the State of New York. This Court has jurisdiction over these Defendants, and Defendants' misrepresentations made in an attempt to convince this Court to reach a different conclusion should be disregarded and, accordingly, their motion to dismiss should be denied.

Smyres has been selling pirated and gray market textbooks to U.S. consumers, through two Ohio book retail stores – Buckeye and UBX. Smyres, Buckeye and UBX have been Publishers' customers since 1995. Importantly, however, Smyres, Buckeye and TRU have also imported illegal textbooks from specific Asian importers <u>known</u> for their rampant acts of textbook piracy. In addition to Smyres-controlled Buckeye and UBX entities, in 2004, Smyres established TRU – an online textbook retail company that services customers all across the United States -- including in New York.

This Court has both general and specific jurisdiction over Defendants. Regarding this Court's general jurisdiction, Smyres and TRU own or operate a company called Textbooksdepot

2

L& M, Inc., located and actively operating in Queens, New York, which sells gray market and other textbooks to New York consumers. TRU also actively sells illegal textbooks to New York consumers through a New York formed limited liability company called Valore Exchange, LLC, through that company's textbook retail website, Valorebooks.com. Smyres has also regularly imported pirated textbooks on behalf and for the benefit of all three of the company Defendants, often traveling to Asia and shipping the books to the United States himself, through New York seaports, en route to Columbus, Ohio. Since February 2007 alone, Smyres and TRU used New York seaports at least ten (10) times to import tens of thousands of textbooks from foreign, infringing distributors.

 This Court has specific jurisdiction over Defendants Smyres and TRU by virtue of their online sales to Plaintiffs in New York. Between September 2006 and August 2007, Smyres sold approximately twenty (20) illegal textbooks to Publishers through TRU, nine (9) of which were delivered to New York. As the sole owner and managing principal of the online retail company, Smyres not only directed these infringing activities, but stood to personally gain from them.

## STATEMENT OF FACTS

 The facts of this case are fully set forth in the Complaint filed in this Court on October 2, 2007 (the "Complaint"), attached to the Declaration of Aaron Georghiades as Exhibit "1," and in Plaintiffs' affidavits submitted in opposition to Defendants' motion to dismiss, and the exhibits annexed thereto.

 From the Complaint, and the above-referenced affidavits, Plaintiffs would like to draw the Court's attention to the following relevant jurisdictional facts:

3

1)     **Defendants Textbooksrus and Smyres sold pirated and gray market textbooks to consumers in New York State, both directly and through independent third party online retailers.**

Between September, 2006 and August 2007, Smyres and TRU sold approximately twenty (20) illegal textbooks to Plaintiffs, nine (9) of which were delivered to addresses in New York State. (Essig Aff. ¶¶ 5-8; Essig Aff. Exhs. A, B; Murphy Aff. ¶¶ 4-6; Murphy Aff. Exhs. A, B; Sampson Aff. ¶ 4; Complaint ¶¶ 40-63 ).

In addition to selling the above textbooks to Plaintiffs in New York directly, TRU actively sells illegal textbooks to New York consumers through independent, third party e-commerce companies, some based outside of New York, and some actually based in New York, all of whom sell to New York consumers. (Murphy Aff. ¶ 8).

2)     **Defendants Smyres, TRU and UBX have been using the seaports of New York to import massive numbers of illegal textbooks into the United States from known pirated-textbook distributors.**

Dating back to at least February 2006, Defendants Smyres, UBX, Buckeye and TRU have imported at least sixty-six (66) shipments of illegal textbooks into the United States from countries and specific exporters in Asia which Plaintiffs have found to be the source of many pirated and gray market textbooks currently being sold on the U.S. market. (Essig Aff. ¶¶ 7-8 ; Murphy Aff. ¶¶ 4-6).  While Smyres, Buckeye Books and TRU were listed as the consignees of those shipments, Smyres apparently often traveled to Asia himself and imported many shipments of textbooks into the United States himself as the consignor.  (Essig Aff. ¶ 8; Murphy Aff. ¶ 6). Many of the other consignors that Defendants used were companies known by Plaintiffs for being actively engaged in acts of pirated textbook sales.  (Essig Aff. ¶ 8; Murphy Aff. ¶ 6).

4

Many of the deliveries made to Smyres as the consignee were actually delivered to TRU's address at 2340 Wood Avenue in Columbus, Ohio. (Essig Aff. ¶ 8; Murphy Aff. ¶ 6).

Smyres, Buckeye Books and TRU make heavy and regular use of New York seaports when shipping illegal textbooks into the United States. (Essig Aff. ¶ 9). The reports examined by Plaintiffs show that Smyres, Buckeye and TRU imported as many as ten (10) shipments into New York seaports – between late February 2007 to June 2007 alone – en route to Ohio, mostly delivered to TRU's 2340 Wood Avenue address. (Essig Aff. ¶ 9). Those ten shipments amounted to approximately 27,940 kilograms, or nearly 7,000 kilograms per month, which equates to approximately 28,000 books imported into New York over a four-month period alone. (Essig Aff. ¶ 9). Smyres, Buckeye and UBX are customers of Plaintiffs, yet they insist on purchasing their stock from foreign exporters (Essig Aff. ¶ 9).

One of the ten shipments that Defendants imported into New York during that four month period was consigned to a company called BookDogBooks, LLC ("BDB"). BDB's address, according to the PIERS reports, is the same as TRU, and further investigation has found that Philip Smyres and TRU are the owners and registrants of BDB. (Essig Aff. ¶ 10).

**3)     Defendants TRU and Smyres sell illegal textbooks to New York consumers through a textbook retail business that they operate, that is incorporated and located in New York, and that is doing business in New York, and also through a NY-based third party textbook retail company.**

In September 2006, Pearson representatives investigated the activities of a small, temporary storefront on Lexington Avenue in New York City, which sold gray market and possibly pirated textbooks to students at Baruch College. (Essig Aff. ¶ 12). The books were being sold by Textbooksdepot L&M, Inc., ("Textbooksdepot"), which is incorporated in New York, and permanently located in Queens, New York. Textbooksdepot's website, located at www.textbooksdepot.com, reflects that TRU owns or operates the Textbookdepot company, as it

5

clearly states on the textbooksdepot.com site, "Textbooksrus.com reserves the right to refuse service to anyone." Thus, Smyres and his online retail company own a company in New York that is doing business in New York. (Essig Aff. ¶¶ 12-13).

In addition, TRU sells textbooks to New York consumers through ValoreBooks.com, which is owned by Valore Exchange, LLC- a New York-based limited liability company. (Murphy Aff. ¶ 6).

**4)    Defendant Smyres owns, and is the managing principal of each company Defendant; there is little corporate and operational independence between the Defendants, if any, and their illegal activities are commingled.**

Smyres owns all of the Defendant entities. (Murphy Aff. ¶ 7; Murphy Aff. Exh. D). (Essig Aff. ¶¶ 7-10; Murphy Aff. ¶¶ 6-7). Smyres is also listed as the principal contact for Buckeye and UBX in all of Plaintiffs' customer databases. Smyres also manages the purchasing, importation and distribution of stock for and among the company Defendants, as well as their local and national sales, including sales to New York. (Essig Aff. ¶¶ 7-10; Murphy Aff. ¶¶ 6-7). Smyres also handles any operational and potential legal problems faced by the company. (Sampson Aff. ¶¶  5-8; Sampson Aff. Exh. A).

Aside from being owned and managed by the same principal, the corporate structures and activities of the Defendant Entities are amorphous and intertwined, including because: UBX and Buckeye Books describe themselves as sister stores on their websites. (Murphy Aff. ¶ 7; Murphy Aff. Exh. E); UBX was formed by Smyres, but its website is registered by Buckeye Books. (Murphy Aff. ¶ 7; Murphy Aff. Exh. F); UBX's customer orders show that Smyres and an individual associated with TRU are the main contacts and point persons at UBX. (Murphy Aff. ¶ 7; Murphy Aff. Exh. C); UBX and TRU's company records show that the two companies

6

previously shared the same address. (Murphy Aff. ¶ 7; Murphy Aff. Exh. C); the PIERS reports

reflect that one shipment consigned to Smyres was delivered to "Buckeye Books/Textbooksrus"

at TRU's address at 2340 Wood Avenue, Columbus, Ohio. (Essig Aff. ¶ 8; Murphy Aff. ¶ 7);

Plaintiffs allege that Defendants also share a common storage of stock in Ohio. (Complaint ¶¶ 8-

10, 87); and UBX is TRU's website registrant, with Smyres listed as the principal agent contact.

(Murphy Aff. ¶ 7; Murphy Aff. Exh. D).

      The Defendant Entities all get their stock from the same sources. Often, Smyres is listed

as the consignee in connection with foreign importations of books, and he presumably distributes

the stock among the Defendant Entities. UBX, for example, is the only Defendant Entity not

listed as a consignee on the PIERS reports, yet UBX nonetheless deals in pirated-textbooks.

UBX returned one pirated textbook to Cengage Learning (formerly called "Thomson Learning")

for a refund, misrepresenting that the book was one that UBX purchased from Cengage

Learning. (Murphy Aff. ¶ 7) (Complaint ¶¶ 8-10, 87) (Sampson Aff. ¶ 10).


## LEGAL STANDARD

### A.    Burden of Proof

      When responding to a motion to dismiss for lack of personal jurisdiction, Plaintiff need

only make a *prima facie* showing of jurisdiction." *See, Ball v. Metallurgie Hoboken-Overpelt,*

*S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)." A Plaintiff may make a *prima facie* showing based

solely on allegations in the complaint, read in its favor, or in the form of affidavits and other

supporting materials. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.

1996), A *prima facie* showing can be established, prior to discovery, by a good faith pleading of

legally sufficient allegations. *See, Ball*, 902 F.2d at 197. Plaintiffs' allegations are to be taken as

true and interpreted in Plaintiffs' favor, notwithstanding any contrary assertions made by the

moving party. *A.I. Trade Fin., Inc., v. Petra Bank,* 989 F.2d 76, 79-80 (2d. Cir. 1993); *See also*

*Cutco Indus., Inc., v. Naughton,* 806 F.2d 361, 365 (2d. Cir. 1986).

**B.**    **Applicable standard on a 12(b) Motion**

The issue of personal jurisdiction must be determined according to the laws of the forum

state. *See Business Trends Analysts v. Freedonia Group, Inc.,* 650 F.Supp. 1452, 1455

(S.D.N.Y.1987); *United States v. First Nat'l City Bank,* 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13

L.Ed.2d 365 (1965).   Accordingly, New York Civil Practice Law and Rules ("CPLR") §301,

which governs "general jurisdiction," and CPLR §302, which governs "specific jurisdiction,"

will determine whether Plaintiffs have met the *prima facie* showing of personal jurisdiction over

Defendants.   A court may exercise general jurisdiction over a defendant where a defendant has

maintained "continuous and systematic contacts with the forum state." *Helicopteros Nacionales*

*de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868 (1984).  *See also J.L.B. Equities,*

*Inc. v. Ocwen Fin. Corp.,* 131 F. Supp. 2d 544, 547-48 (S.D.N.Y. 2001) (citations omitted).

Specific jurisdiction exists when "the Defendant purposely avails itself of the privilege of

conducting activities within the forum state, thus invoking the benefits and protections of its

law." *Burger King Corp. v. Rudvewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174 (1985) (quotation

omitted).   Finally, "if the exercise of jurisdiction is appropriate under [either] statute, the court

must decide whether such exercise comports with the requisites of due process." *Bensusan Rest.*

*Corp. v. King,* 126 F.3d 25, 27 (2d. Cir. 1997) (citing *Metropolitan Life Ins. Co. v. Robertson-*

*Ceco Corp.,* 84 F.3d 560, 567 (2d. Cir. 1996), *cert denied* 519 U.S. 1006 (1996).