ARGUMENT

POINT I

EXERCISING PERSONAL JURISDICTION
CONFORMS WITH THE REQUIREMENTS
OF CONSTITUTIONAL DUE PROCESS

As stated above, once Plaintiffs have shown that personal jurisdiction is proper under

either CPLR §301 or CPLR §302, "the court must decide whether such exercise comports with

the requisites of due process." *Bensusan supra,* 126 F.3d at 27 (citations omitted). Due process

requires that an out of state Defendant "have certain minimum contacts with [the forum] such

that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed.

95 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940) ). These

minimum contacts must be based upon "some act by which [a] Defendant purposefully avails

itself of the privilege of conducting activities within the forum State...." *Burger King Corp. v.*

*Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v.*

*Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958)).

The critical inquiry for due process is whether the Defendants sought to serve, "directly

or indirectly," the market for its books in New York. *See World-Wide Volkswagen,* 444 U.S. at

297, 100 S.Ct. 559, 567; 62 L.Ed.2d 490 (1980); *Montalbano v. Easco Hand Tools, Inc.,* 766

F.2d 737, 742 (2d Cir.1985) . The facts here establish *prima facie* jurisdiction on that basis. As

has been clearly shown in this case, Defendants Smyres and TRU have sold numerous infringing

goods to Plaintiffs and other consumers in New York, through TRU's website, through foreign

third-party retailers who sell infringing products to New York, through a New York-based

company, Valorebooks.com, and through Textbooksdepot, a New York-incorporated company

9

that TRU apparently owns or operates. In addition to their direct sales into New York,

Defendants also regularly import thousands of textbooks into New York seaports from Asian

exporters known for their acts of pirated-textbook distribution. (Essig Aff. ¶¶ 5-10; Essig Aff.

Exh. C; Murphy Aff. ¶¶ 4-6; Complaint ¶¶ 40-63).

Defendants clearly attempted to serve the New York market with their textbooks, and

Plaintiffs have alleged sufficient minimum contacts to conform with due process, and for this

Court to exercise personal jurisdiction over Defendants in this case.

**B.    The Exercise of Personal Jurisdiction Here is Reasonable.**

Once minimum contacts are established, it is the "exceptional situation" where the

exercise of jurisdiction is unreasonable. *Bank Brussels Lambert v. Fiddler Gonzalez*

*&Rodriguez*, 305 F.3d 120, 130 (2d Cir. 2002). With respect to determining "reasonableness,"

the Second Circuit has explained, "courts are to consider five factors in evaluating

reasonableness: (1) the burden that the exercise of jurisdiction will impose on the Defendant; (2)

the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining

convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most

efficient resolution of the controversy; and (5) the shared interest of the states in furthering

substantive social policies. Where a plaintiff makes the threshold showing of the minimum

contacts required for the first test, a Defendant must present a compelling case that the presence

of some other considerations would render jurisdiction unreasonable." *Id.* at 129 (quotation and

citations omitted).

All five factors support the finding that this Court has personal jurisdiction over

Defendants in this case. As to the first factor, Defendants all have widespread operations

throughout the United States and abroad, as evidenced by their national sales, international

10

purchases, and international importation of textbooks. They will shoulder little burden litigating in federal court in New York City. *See, e.g., Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000) (constitutionally reasonable to exercise jurisdiction over corporations in New York City, with its "central location, easy access, and extensive facilities of all kinds"); *Metro. Life Ins. Co.*, 84 F.3d at 574 (the "conveniences of modern communication and transportation ease" Defendant's burden). Smyres apparently travels to countries all over the world (as shown by him acting as consignor on many international shipments to the company Defendants),and Defendants regularly import thousands of textbooks into New York from Asia, so defending against Plaintiffs' claims in New York would not be overly burdensome in that regard. (Essig Aff. ¶¶ 5-10; Essig Aff. Exh. C).

Second, New York, as the forum state, has a strong interest in adjudicating this case, brought in part by Plaintiffs to protect New York State citizens and property located in New York from the Defendants' out-of-state tortious conduct. *See, e.g., Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18, 24 (2d Cir. 1988) (holding that New York, as the forum state, has an interest in "providing a forum for its citizens who have been injured by the intentional acts of nonresidents").

Third, Plaintiffs have the utmost interest in obtaining convenient and effective relief in a New York forum. McGraw-Hill is headquartered in New York City, Wiley is a New York corporation, and the other Plaintiffs' principal places of business are all located in or around the tri-state area. New York is therefore a convenient forum for the other Plaintiffs in this action, Pearson Education, John Wiley & Sons and Cengage Learning. It is clearly more effective for all to litigate together in one court than for each of the Plaintiffs to bring suit in the courts nearest to each Plaintiff's principal places of business, or in each of the many states where Defendants

11

delivered other infringing textbooks, or where UBX returned pirated books to Cengage Learning

for a fraudulent refund. *See Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352,

366 (S.D.N.Y. 2004) (the "burden on Plaintiffs, were they required to bring separate actions

against each Defendant . . . would be colossal").

Fourth, the efficient functioning of the interstate judicial system supports having this case

heard in one court in New York. Given that Smyres and TRU (and the other Defendants, as

Plaintiffs believe they will reveal in further discovery) regularly conduct business in New York,

and that Defendants regularly utilize New York seaports, transport goods throughout the State of

New York, and have minimum contacts here, Judicial Economy dictates that this Court hears the

entire case in New York. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305

F.3d 120, 129–30 (2d Cir. 2002); *Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.,* 319 F. Supp. 2d

352, 366 (S.D.N.Y. 2004) ("Both Plaintiffs' and the judicial system's interests . . . in a single,

consolidated action are therefore overwhelming."); *see also Boris v. Bock Water Heaters, Inc.,* 3

Misc. 3d 835, 841, 775 N.Y.S.2d 452, 457 (N.Y. Sup. 2004) ("[I]t would be more orderly to

allow plaintiff to sue all named Defendants in a single action which would promote 'the

interstate judicial system's shared interests in obtaining the most efficient resolution of the

controversy.'")(*quoting LaMarca v. Pak-Mor Mfg. Co.,* 95 N.Y.2d 210, 219, 735 N.E.2d 883,

889; 713 N.Y.S.2d 304, 310 (2000)).

Finally, New York's interest in furthering substantive social policies, *i.e.,* maintaining a

stream of commerce free from counterfeit goods, gray market goods, and goods containing

infringements of copyrights and trademarks, which ensures the distribution, sale and purchase of

legitimate goods by consumers, and the advancement of scholarly endeavor, will be advanced by

hearing this case in a single New York forum, and exercising personal jurisdiction here would

12

not be overly burdensome on this Court, or offend any other state because federal law, not New

York law, will apply.

**POINT II**

**THIS COURT HAS GENERAL
JURISDICTION OVER DEFENDANTS
SMYRES AND TRU UNDER CPLR 301**

Pursuant to New York CPLR § 301, "[a] court may exercise such jurisdiction over

persons, property, or status as might have been exercised heretofore." This section authorizes the

general exercise of personal jurisdiction over a non-resident defendant if it is "engaged in such a

continuous and systematic course of doing business here as to warrant a finding of its presence in

this jurisdiction." *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 547-48

(S.D.N.Y. 2001) (citations omitted); *see also Fashion Fragrance & Cosmetics v. Croddick*, 2003

U.S. Dist. LEXIS 2220 at *7 (S.D.N.Y. 2003 Feb. 11, 2003).

To determine whether a defendant "does business" in New York, courts have focused on

the following factors: "the existence of an office in New York; the solicitation of business in the

state; the presence of bank accounts and other property in the state; and the presence of

employees of the foreign Defendant in the state." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763

F.2d 55, 58 (2d Cir. 1985); *see also Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 434 N.E.2d 692, 694-

95 (1982). However, the test is not precise and is decided upon the "aggregate of the

corporation's activities in the State such that it may be said to be "present" in the State 'not

occasionally or casually, but with a fair measure of permanence and continuity.'" *Id.*, (quoting

*Tauza v. Susquehana Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)).

13

Here, Defendants TRU and Smyres are subject to general jurisdiction under CPLR § 301 because of the following continuous contacts with New York: (1) Smyres' regular and systematic use of New York seaports and distribution channels for the international importation of their stock; (2) the regular and continuous solicitation of, and sales to, New York consumers through TRU's e-commerce website which Smyres controls and from which he benefits; (3) TRU's continuous and systematic sales of books to New York consumers, including Plaintiffs, through New York-domiciled third party textbook retailers, such as Valorebooks.com; (4) TRU's apparent ownership or control over another textbook retail company located in New York (Textbooksdepot), which is actively selling to New York consumers; and (5) TRU's use of non-domiciled third-party retailers to sell infringing works to New York consumers.  Moreover, to the extent that any of the contacts described above only involve TRU, Plaintiffs submit, and explain further below, that Smyres not only benefited from, but controlled, all of TRU's acts.[1] (Murphy Aff. ¶¶ 5-9; Essig Aff. ¶¶ 5-14; Complaint ¶¶ 40-63, 90).

i)        **Importation of Books to New York Ports**

Smyres and TRU make heavy and regular use of the New York seaports when shipping their textbooks into the United States, often using consignors known for their exportation of illegal textbooks.  The reports examined by Plaintiffs show that Smyres, Buckeye, TRU, and a company called BookDogBooks (which is also owned by Smyres) imported as many as ten (10) shipments into New York seaports – between late February 2007 to June 2007 alone – en route to Ohio, mostly delivered to TRU's 2340 Wood Avenue address.  Those ten shipments amounted to approximately 27,940 kilograms, or nearly 7,000 kilograms per month, which equates to

---

[1] As is explained in Point V below, in the event this Court is unable to conclude from the pleadings and the affidavits submitted herewith that it has jurisdiction over all Defendants to this action, Plaintiffs respectfully request leave from this Court to conduct limited jurisdictional discovery to establish facts sufficient for personal jurisdiction to b exercised over all Defendants.

approximately 28,000 books imported into New York over a four month period alone. Smyres acted as consignor with respect to most of the shipments into New York. (Essig Aff. ¶¶ 8; Essig. Aff. Exh. C).

ii)     **Continuous and Systematic Solicitation of, and Sales to, New York Consumers Through E-Commerce Websites and New York Retail Companies**

TRU and Smyres have continuously and systematically solicited and sold infringing works to New York consumers through a host of different e-commerce websites, including, but not limited to, TRU's own e-commerce website, textbookdepot.com (a New York incorporated company, located in Elmhurst, New York, which TRU apparently owns and/or operates, and which actively sells to New York consumers, including students at Baruch College and Pace University in New York), Valorebooks.com (a New York-based limited liability company), and Thetextbooksguy.com (a foreign entity that sold infringing works to New York consumers, that it obtained directly from TRU). (Murphy Aff. ¶¶ 5-6, 8; Essig Aff. ¶¶ 5-8, 12-13).

In *Laufer, supra,* the Court held that "solicitation of business alone" will not satisfy the requirements of CPLR §301, "but when there are activities of substance in addition to solicitation there is presence and, therefore, jurisdiction." *Id.* at 310; *see also Purdue Pharma L.P. v. Impax Laboratories, Inc.*, 2003 U.S. Dist. LEXIS 15428 (S.D.N.Y. September 4, 2003) (finding general jurisdiction over defendant who regularly solicited New York consumers through its website and pursued various other marketing channels aimed at New York, despite not having any office, bank account, employees or any other property in New York).

Plaintiffs in this case allege far more than mere solicitation to New York consumers- they also have presented evidence of regular sales to New York consumers through numerous New York and foreign entities – some under Defendants' ownership or control – and the substantial use of New York ports in furtherance of their activities. *See D. Siegal, New York Practice, § 82,*

15

at 90-91. Under this "solicitation-plus" rule, "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'" *Aquascutum v. S.S. American Champion*, 426 F.2d 205, 211-12 (2d. Cir. 1970) (internal citations omitted); *Elish v. St. Louis S. R. Co.*, 305 N.Y. 267, 112 N.E.2d 842 (1953); *Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 208 N.E.2d 439 (1965).

Given the systematic acts and contacts described herein, Plaintiffs respectfully submit that this Court has general jurisdiction over Defendants Smyres and TRU under CPLR §301.

**POINT III**

**DEFENDANTS TRU AND SMYRES ARE
SUBJECT TO SPECIFIC JURISDICTION UNDER CPLR 302**

A.    **Defendants TRU and Smyres are Subject to Specific Jurisdiction By Transacting Business Within This State and Contracting to Supply Goods in New York Under CPLR § 302(a)(3)(1).**

Defendants TRU and Smyres are subject to personal jurisdiction under CPLR § 302(a)(3)(1) as a result of transacting business within the state and contracting to supply goods in New York, by having made the nine infringing sales to Plaintiffs in New York. CPLR § 302(a)(3)(1) provides, in pertinent part, that a court may exercise personal jurisdiction over a non-domiciliary who: "transacts any business within the state or contracts anywhere to supply goods or services in the state" *See* CPLR § 302(a)(3)(i). Proof of just one transaction is sufficient to subject Defendants to jurisdiction under the statute. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43-44 (1988). In fact, merely <u>offering</u> one copy of an infringing work for sale in New York, even if there is no actual sale, is sufficient to confer personal jurisdiction. *See Business Trends Analysts v. Freedonia Group, Inc.*, 650 F. Supp. 1452, 1455-56 (S.D.N.Y. 1987) (shipment of one copy into New York; actual sale unnecessary);

16

*Metropa Co. v. Choi,* 458 F.Supp. 1052, 1054 (S.D.N.Y. 1978) (trademark infringement; only

New York contact of California Defendant was mail order shipment of two wigs); *Honda*

*Associates, Inc. v. Nozawa Trading, Inc.,* 374 F. Supp. 886, 888-89 (S.D.N.Y. 1974) (trademark

infringement, actual sale unnecessary; only New York contact of California Defendant was mail

order shipment of three karate uniforms valued at $37).

      As illustrated above, TRU and Smyres sold nine infringing works to Plaintiffs in New

York. In so doing, Defendants Smyres and TRU transacted business with Plaintiffs in New

York, satisfying the requirements of CPLR § 302(a)(3)(i).

      Plaintiffs also submit that personal jurisdiction is proper under this section even if this

Court were to only look to TRU's sales through independent third parties in New York, such as

its sales through Valorbooks.com. *See* CPLR 302(a) (in person or *through an agent* ); *Heritage*

*House Frame & Moulding Co. v. Boyce Highlands Furniture Co.,* 88 F.R.D. 172, 173 (E.D.N.Y.

1980).

      Interestingly, Defendants are trying to persuade this Court that they have no contacts with

New York whatsoever, while at the same time they continue to sell infringing works in this

forum- even after the instant motion was filed. (Murphy Aff. ¶ 8).

**B.**    **Defendants TRU and Smyres Are Subject To Personal Jurisdiction Resulting From Committing A Tortious Act Outside of New York Pursuant to CPLR § 302(a)(3)(ii)**

      In the event that this Court construes the solicitation, sale, and transport of the infringing

works as having occurred outside of New York, jurisdiction over Defendants TRU and Smyres is

nonetheless conferred pursuant to CPLR § 302(a)(3), which provides that a court may exercise

personal jurisdiction over a non-domiciliary who: "commits a tortious act without the state

causing injury to person or property within the state, except as to a cause of action for
defamation of character arising from the act, if he

> (i) regularly does or solicits business, or engages in any other persistent course
> of conduct, or derives substantial revenue from goods used or consumed or
> services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the
> state and derives substantial revenue from interstate or international
> commerce;"

CPLR § 302(a)(3).

Exercising specific jurisdiction over Smyres and TRU is proper under this section
because Smyres and TRU should reasonably have expected consequences in New York from
their solicitation, sale, and delivery of infringing works to consumers located in New York, as
outlined above. Not only do Smyres and TRU sell to New York consumers directly through
TRU's website, but they also do so through third party retailers domiciled in New York, such as
Valorebooks.com, and entities located outside of New York. Further, Smyres and TRU are
subject to jurisdiction through the derivation of substantial revenue from interstate or
international commerce. Defendant TRU's revenues are largely, if not wholly, interstate in
nature, as TRU offer goods for sale across the U.S., and Smyres and TRU import goods from
Asia to multiple destinations in the U.S.

In *LaMarca v. Pak-Mor Manufacturing Co.*, 95 N.Y.2d 210 (2000), the Court of Appeals
set forth the required elements under § 302(a)(3)(ii):

> The conferral of jurisdiction under this provision rests on five elements: First, that
> Defendant committed a tortious act outside the State; second, that the cause of
> action arises from that act; third, that the act caused injury to a person or property
> within the State; fourth, that Defendant expected or should reasonably have
> expected the act to have consequences in the State; and fifth, that Defendant
> derived substantial revenue from interstate or international commerce.

*Id.* At 214.

18

As discussed *supra*, Defendants Smyres and TRU sold infringing works to New York, satisfying the first two prongs of this test. (Murphy Aff. ¶¶ 5-6, 8; Essig Aff. ¶¶ 5-8).

**i)     Plaintiffs' Injuries Occurred in New York in Satisfaction of the Situs of Injury Test (Third Prong).**

Plaintiffs allege numerous injuries "to person or property within the state" as required by the third prong of § 302(a)(3)(ii).  The "situs of injury test" is designed to prevent Plaintiffs who are injured outside of New York from carrying their injuries back to New York as a basis for claiming an injury "within the state." *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 58 (2d Cir. 2000); *see also In re DES Cases*, 789 F. Supp. 552, 570 (E.D.N.Y. 1992).  In making jurisdictional analyses under this section, courts draw a distinction between the first effect of the actual tort and the many further effects (such as a lowered bank account or lower tax revenue) that may follow.  "We have previously held in applying N.Y. C.P.L.R. § 302(a)(3) that the 'original event' occurs *'where the first effect of the tort . . . that ultimately produced the final economic injury' is located." DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84-85 (2d Cir. 2001) (emphasis added).

In this case, the purchase of the infringing goods occurred in New York, and the illegal goods were delivered to Plaintiffs in New York.  Thus, New York is the situs where the injury occurred.  (Essig Aff. ¶¶ 5-6; Murphy Aff. ¶¶ 5-8).

**ii)     Defendants Smyres and TRU Expected or Should Reasonably Have Expected Their Acts to Have Consequences in New York (Fourth Prong).**

The foreseeability prong is satisfied in this case.  The foreseeability test is objective, rather than subjective, and relates to "forum consequences generally, and not to the specific event which produced the injury within the state." *Fantis Foods, Inc. v. Standard Importing Co.,*

19

49 N.Y.2d 317, 327 n.4, 402 N.E.2d 122, 126 (1980); *see also LaMarca v. Pak-Mor Mfg. Co.*, 95

N.Y.2d 210, 215 (2000): "[T]he Defendant need not foresee the specific event that produced the

alleged injury."

 In *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999), the Second Circuit said

that courts should exercise jurisdiction where Defendants have shown some "discernible effort to

directly or indirectly serve the New York market." *Id* at 241 (quoting *Schaadt v. T.W. Kutter,*

*Inc.*, 169 A.D.2d 969; 564 N.Y.S. 2d 865, 866 (N.Y. App. Div. 1991)); *see also Kreutter v.*

*McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988).

 It is abundantly clear that Smyres and TRU expected, or at the very least should

reasonably have expected their tortious acts to have consequences in the State of New York.

They can hardly sell illegal textbooks to New York consumers, through their own website, and

through New York-domiciled and foreign retail companies, and not expect those unlawful acts to

have consequences here.  It would be unjust to allow TRU, and its principal, Smyres, to escape

the jurisdiction of this Court under such circumstances.

### iii) Defendant TRU Derives Substantial Revenue from Interstate Commerce (Fifth Prong).

 The fifth element of CPLR § 302(a)(3)(ii) requires that the Defendants TRU and Smyres

derive substantial revenue from interstate or international commerce.  This prong is intended to

exclude a Defendant "whose business operations are of a local character." *Ingraham v. Carroll*,

90 N.Y.2d 592, 599, 687 N.E.2d 1293, 1296 (1997) (quoting *Report of the Administrative Board*

*of the Judicial Conference of the State of New York for the Judicial Year July 1, 1965 through*

*June 30, 1966*, Legislative Doc. No. 90 (1967).

 Smyres and TRU derive substantial revenue from interstate or international commerce by

selling online to consumers across the United States.  In fact, TRU's revenues are largely, if not

20

wholly, interstate in nature, as they apparently sell textbooks across the United States, and both import large shipments of goods from Asia, and have done so on at least sixty-six occasions since February 2006 (Essig Aff. ¶8). In addition, TRU also sells to other online retailers across the United States whose infringing products enter New York's stream of commerce. (Murphy Aff. ¶8).

In summary, TRU and its owner, Smyres, are clearly not engaged in business of a local character. Based on the five elements set forth in *LaMarca, supra*, Plaintiffs have properly made out a *prima facie* showing that Defendants are subject to personal jurisdiction in New York pursuant to CPLR § 302(a)(3)(ii).

### POINT IV

### THIS COURT HAS SPECIFIC JURISDICTION OVER SMYRES BECAUSE HE OWNS TRU AND SUPERVISED AND BENEFITED FROM TRU'S ACTS

It is settled law in this jurisdiction that an individual cannot shield himself from jurisdiction merely because the acts complained of were done through a corporate entity. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 471-472; 522 N.E.2d 40, 47 ("we hold the fiduciary shield rule is not available to defeat jurisdiction under the New York long-arm statute."). In fact, a corporate entity can be considered the individual's agent so as to subject that individual to jurisdiction under CPLR 302, if a) the corporate entity engaged in purposeful activities in New York in relation to the transaction; b) the individual consented to and benefited from that transaction; and c) the individual exercised some control or supervision over the entity in relation to the transaction. *See Craig v. First Web Bill,* 2004 U.S. Dist. LEXIS 27432 at **34-37 (*citing Retail Software Services, Inc. v. Lashlee,* 854 F.2d 18, 22 (2d. Cir. 1988)).

21

To satisfy requirements (b) and (c) of the criteria laid out in *Craig*, courts in this District have inferred an individual's benefit and control from the size of the entity and the individual's position within the company. *See Craig*, 2004 U.S. Dist. LEXIS 27432 at **34-37; *Basquiat v. Kemper Snowboards*, 1997 U.S. Dist. LEXIS 12653 (S.D.N.Y. Aug. 25, 1997) (inference of financial benefit from infringing sales derived from individual's high ranking position within small company); *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 982 (S.D.N.Y. 1992) (President and shareholder of company benefited from company's sales of patent infringing product); *Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) (officer and shareholder Defendants deemed to have benefited from deposits received under franchise agreements).

Here, TRU engaged in purposeful activities in New York on numerous occasions, and Smyres was the primary actor behind those activities, by having consented to, benefited from, and exercised control or supervision over those transactions. Smyres formed and is the Chief Executive Officer of TRU, controls its day-to-day operations, and, being the owner of such a small company, benefits directly from those transactions. Moreover, Smyres apparently purchases TRU's stock, and imports that stock – sometimes personally – from Asia. (Sampson Aff. ¶¶ 3, 5-8; Murphy Aff. ¶¶ 3, 7; Essig Aff. ¶¶ 3, 8-10). It is therefore clearly proper for this Court to exercise specific jurisdiction over him under CPLR § 302. *Craig*, 2004 U.S. Dist. LEXIS 27432 at *34-37 (E.D.N.Y. Nov. 29, 2004).

22

POINT V

**ALTERNATIVELY, PLAINTIFFS ARE ENTITLED TO CONDUCT
LIMITED DISCOVERY ON PERSONAL JURISDICTION ISSUES**

Publishers have submitted uncontroverted evidence of this Court's personal jurisdiction

over all Defendants.  Should this Court require additional proof to confirm its jurisdiction over

these Defendants, however, Plaintiffs respectfully alternatively request leave to conduct limited

jurisdictional discovery and/or to participate in an evidentiary hearing to allow the Court to

confirm its jurisdiction.

The Second Circuit has noted that district courts enjoy "considerable procedural leeway"

in deciding 12(b)(2) motions.  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153

(2d Cir. 1999).  The court may determine the motion on the basis of affidavits or, if necessary,

permit discovery before deciding the motion or conduct an evidentiary hearing.  *Marine Midland*

*Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).[2]  Where, as here, a defendant moves to

dismiss on jurisdictional grounds before discovery is complete, the Court of Appeals has held

that "the opposing party need only demonstrate that facts 'may exist' whereby to defeat the

motion.  It need not be demonstrated that they do exist.  This obviously must await discovery."

*Peterson v. Spartan Industries, Inc.*, 33 N.Y.2d 463, 310 N.E.2d 513, 354 N.Y.S.2d 905 (1974).

A *prima facie* showing of jurisdiction is not even required, particularly for one seeking to confer

---

[2] Plaintiffs are entitled to discovery on jurisdictional issues pursuant to a motion to dismiss once
they make a "threshold showing of jurisdiction." *Newbro v. Freed*, 2004 WL 691392 at *3
(S.D.N.Y. Mar. 31, 2004); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp.
2d 289, 329 (S.D.N.Y. 2003) (Plaintiffs entitled to discovery once they plead facts "sufficient to
demonstrate a need for discovery on that issue."); *Boris v. Bock Water Heaters, Inc.*, 3 Misc. 3d
835, 840-41, 775 N.Y.S.2d 452, 457 (N.Y. Sup. 2004) (where the nature and extent of
Defendant's sales and shipments of goods into New York was unknown, plaintiff was entitled to
conduct discovery).

23

jurisdiction under the long-arm statute. All that is required is that the opposing party make a "sufficient start ." *Boris*, 3 Misc. 3d 835 at 840.

If this Court is unable to conclude from the pleadings and the affidavits submitted herewith that it does not have jurisdiction over all Defendants, Plaintiffs submit that they have made a showing far beyond a "sufficient start" and are at the least entitled to discovery on Defendants' contacts with New York. Specifically, Plaintiffs have shown and/or alleged that: a) Smyres owns and is the managing principal of all of the Defendant entities; b) Smyres manages the purchasing, importation and distribution of stock for and among the Defendant entities, as well as their local and national sales, including sales to New York; c) Smyres handles any operational and potentially legal problems faced by all Defendants; d) aside from being owned and managed by the same principal, Defendants' corporate structures and activities are amorphous and inextricably intertwined, in that i) Buckeye and UBX describe themselves as sister stores on their websites; ii) UBX was formed by Smyres, but its website domain is registered by Buckeye Books; iii) UBX's customer orders show that Smyres and an individual associated with TRU are the main contacts and point persons at UBX; iv) UBX and TRU's company records show that the two companies previously shared the same address; v) the PIERS reports reflect that one shipment consigned to Smyres was delivered to "Buckeye Books/Textbooksrus" at TRU's address at 2340 Wood Avenue, Columbus, Ohio; vi) the company Defendants all get their stock from the same sources- often, Smyres is listed as the consignee in connection with foreign importations, and he presumably distributes the stock among the company Defendants; and vii) UBX is TRU's website domain registrant, with Smyres listed as the principal agent contact. (Murphy Aff. ¶ 7; Murphy Aff. Exhs. C-F).

24

Plaintiffs submit that in the unlikely event that this Court decides that Plaintiffs have made an insufficient showing of each Defendants' jurisdictionally sufficient contacts, additional discovery would reveal sufficient contacts from Buckeye and UBX with New York either through TRU and Smyres, or independently therefrom, to enable this Court to exercise personal jurisdiction over them.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss for lack of personal jurisdiction.

Dated: New York, New York
      November 9, 2007.

**COZEN O'CONNOR**
*A Professional Corporation*
Attorneys for Plaintiffs
CENGAGE LEARNING, INC., PEARSON
EDUCATION, INC., JOHN WILEY & SONS,
INC., and THE MCGRAW-HILL COMPANIES,
INC.

By: _____
Aaron P. Georghiades (AG 8110)
909 Third Avenue, 17th Floor
New York, New York 10022
Tel: (212) 453-3890
Fax: (877) 526-3076

25

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK        )
                         )   ss
COUNTY OF NEW YORK       )

    Elba Iglesias, being duly sworn, deposes and says that: Deponent is not a party to this

action, is over 18 years of age and is employed by Cozen O'Connor, 909 Third Avenue, New

York, NY 10022.

    On November 8, 2007 Deponent served the within MEMORANDUM OF LAW IN

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL

JURISDICTION upon:

        Neil B. Mooney, Esq.
        The Mooney Law Firm, LLC
        1911 Capital Circle N.E.
        Tallahassee, FL 32308

    by depositing a true copy thereof in a securely sealed, properly addressed fully postpaid,

first class mail wrapper in an official depository under the exclusive care and custody of the

United States Post Office.

                                 _____
                                   ELBA IGLESIAS

Sworn to before me this 8th day
of November 2007.

_____
    Notary Public

RHONDA R. ROBINSON
Notary Public, State of New York
No. 01RO5054406
Qualified in Suffolk County
Commission Expires January 16, 2010