UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

CENAGE LEARNING, INC. (f/k/a THOMSON
LEARNING, INC.), PEARSON EDUCATION,
INC., JOHN WILEY & SONS, INC., AND
THE MCGRAW-HILL COMPANIES, INC.,

        Plaintiff,

    -against-

BUCKEYE BOOKS, USED BOOK EXCHANGE,
TEXTBOOKSRUS.COM, LLC, AND
PHILIP SMYRES,

        Defendants.

---------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/16/08

07 Civ. 8540 (CM)(THK)

### MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS

McMahon, J.:

    Plaintiffs Thomson, Wiley, Pearson and McGraw Hill are all distinguished publishers of textbooks. The Complaint in this action alleges that defendants Buckeye Books ("Buckeye") and Used Book Exchange ("UBX") are "sister stores" that sell textbooks to students at The Ohio State University (Go Bucks!) in Columbus, Ohio. Both Buckeye and UBX are located at 2060 North High Street (conveniently across the street from the northern boundary of Ohio State's campus). The Complaint alleges that both stores are owned and controlled by defendant Philip Smyres, who, upon information and belief, resides at 10 East 15th Avenue in Columbus.[1] Smyres also allegedly is the principal of a web-based business, www.textbooksrus.com, which is located at 2340 Wood Avenue.[2]

---

[1] 10 East 15th Street is just off North High Street, a few blocks south of the location of Buckeye and UBX. It sits right behind yet another bookstore serving the campus – Barnes & Noble Superstore, f/k/a Long's Bookstore. Long's is where the Court, and the Court's parents before her, bought all their books during their many collective years as students at Ohio State.

[2] If the zip codes listed in the Complaint are correct, textbooksrus.com is located, not adjacent to the Ohio State campus, but in Upper Arlington, a suburb of Columbus.

Defendants are allegedly purveyors of pirated (i.e., "knockoff") textbooks imported from Asia, as well as foreign edition reprints of textbooks that, while legitimately offered for sale abroad, were not intended for sale in the United States. They are alleged to have imported these books into the United States and then "passed off" illicit textbooks as legitimate by "restickering" them so that they would appear to be legitimate works authorized to be sold in the United States. Finally, defendants are alleged to have "returned" illicit textbooks that they never purchased from plaintiffs to at least one plaintiff (Thomson), and possibly to all the plaintiffs, in order to obtain "refunds" for those books. Plaintiffs sue defendants in this Court alleging a variety of claims, including copyright infringement, trademark infringement, false advertising, unfair competition and illegal importation of copyrighted materials, invoking the various federal statutes. The brazen (if true) act of "returning" illicit textbooks for cash refunds is alleged to constitute common law fraud by UBX and Smyres.

Defendants move collectively to dismiss the Complaint for lack of personal jurisdiction. It is undisputed that defendants are physically located in the State of Ohio; do not have any offices, agents, telephone listings or mailing addresses in New York; do not own or rent any property in the State of New York; and do not have any employees in the State of New York. Defendants also do not advertise in New York publications. However, textbooksrus.com (TRU) offers to sell textbooks nationwide over the Internet, and is specifically alleged to have sold copies of illicit versions of copyrighted textbooks (both pirate editions or foreign editions) to each of the plaintiffs in this action, who received them in New York. (Cplt. ¶¶ 40-60.) Additionally, although this is not pleaded in the Complaint, "defendants" (collectively) are alleged to have imported books into the United States from Asia via ports in the State of New York. (Pl. Opp. at 2.)

In neither the motion nor in the opposition is the slightest effort made to distinguish among the four defendants. There is, however, no specific "piercing the corporate veil" allegation in the Complaint (although there are such allegations in the affidavits that accompany the response to the instant motion). Rather, plaintiffs plead – entirely on information and belief – that the three corporate defendants share a common "source of stock," and that Smyres, as their principal, "personally manages, orchestrates and pursues" those entities' ordering, purchasing, distribution and sales of textbooks, as well as their returns of textbooks. (Cplt. ¶¶ 10, 60, 87.)[3] It appears that plaintiffs intend for the court to treat the defendants as a single entity – and defendants do not argue otherwise.

There has been no discovery in connection with the instant motion. Therefore, the standard for deciding the motion favors plaintiff. While plaintiff bears the burden of showing that the court has jurisdiction over the defendant, Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F. 3d 560, 566 (2d Cir. 1996), at the pre-discovery stage the plaintiff defeats the motion simply by pleading in good faith legally sufficient allegations of jurisdiction – i.e., by making a

---

[3] The briefing on this motion is entirely inadequate – from both sides, but particularly from movants.

prima facie showing that jurisdiction exists. In reviewing a pre-discovery motion to dismiss for lack of personal jurisdiction, "all allegations [in the complaint] are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A. I. Trade Fin., Inc. v. Petra Bank, 989 F. 2d 76, 79-80 (2d Cir. 1993). "Pleading in good faith" a legally sufficient allegation of jurisdiction of course requires that the allegation appear in the Complaint.

Lumping all the "defendants" together for purposes of alleging connections to New York is, however, patently insufficient. Buckeye, UBX, TRU and Smyres are separate entities and are presumptively entitled to have independent existence -- which means that plaintiffs must either establish a basis for subjecting each of them, individually, to the jurisdiction of this Court, or must satisfy the Court that TRU's jurisdictional contacts can be attributed to its affiliates under the "mere department" rule. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984).

Plaintiffs make absolutely no showing that defendants do business in New York. Therefore, the Court will focus on the issue of specific, rather than general, jurisdiction.

Under CPLR 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary defendant if that defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state," as long as the "cause of action aris[es] from" the "acts which are the basis of jurisdiction."

Transactional personal jurisdiction exists over TRU by virtue of its alleged sales of infringing and unauthorized foreign edition textbooks to the defendants in New York and its shipment of nine of those textbooks into New York. In a case brought by the same plaintiffs against different defendants, alleging different claims of copyright infringement, Judge Marrero of this court upheld a claim of specific (as opposed to general) jurisdiction over the defendants, who allegedly sold copyright-infringing merchandise over the Internet to customers in New York. Pearson Education Inc., v. Shi, -- F. Supp. 2d --, 2007 WL 4358455 (S.D.N.Y. Dec. 11, 2007). Judge Marrero's reasoning applies to TRU as well. Because even one transaction is sufficient to subject a defendant to jurisdiction under a theory of transactional jurisdiction, Kreutter v. McFadden Oil Corp., 71 N.Y. 2d 460, 467 (1988), plaintiffs' allegation that TRU sold each of them illicit textbooks that were ordered from and delivered into New York brings that defendant within the jurisdiction of this Court on claims relating to trafficking in infringing textbooks and passing off foreign editions as books that were authorized for sale in the United States. Defendants' wholly conclusory argument to the contrary (including the contention that no cause of action arose from the sale of books into New York) is unpersuasive.

As to Smyres, the Complaint sufficiently pleads that he directed and controlled the sales activity of TRU for the court to assert transactional jurisdiction over him in relation to the infringing and unfair activity of TRU.

Furthermore, the Court specifically finds that an exercise of specific jurisdiction over TRU, and over Smyres in relation to the activity of TRU, comports with the minimum constitutional standards of due process under the Fourteenth Amendment. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Long after the conclusion of briefing on this motion, the Court recently received a letter from the Florida attorney who has entered an appearance for defendants (not the lawyer who made the motion). In this letter, the attorney reveals that the standard form contract of sale between each plaintiff and TRU (the "Terms and Conditions" that a party is supposed to review before committing to an internet-based transaction) contains a Term and Condition agreeing 'to the exclusive jurisdiction and the venue of the State Courts of the State of Ohio," together with a waiver of any right to contest Ohio's jurisdiction over disputes arising between the parties out of the sales of the books.

The problem with this belatedly-provided information is that the only motion presently before the Court is a motion for lack of personal jurisdiction on the ground that the courts of New York lack jurisdiction over the defendants. TRU and Smyres have not made a motion to dismiss on the ground that plaintiffs consented to the exclusive jurisdiction of the State courts of the State of Ohio. Nor has a motion been made pursuant to 28 U.S.C. §§ 1404 or 1406 to transfer this case to Ohio, as is usually the case (in the alternative) when a motion to dismiss for lack of personal jurisdiction is filed in a federal court. The only issue raised by the motion is whether these defendants are statutorily and constitutionally subject to suit in New York – not whether plaintiffs have previously waived their right to sue defendants (or some of them) in New York, or whether some other court has a better claim to the case. It would have been advisable for defendants' counsel to be aware of any jurisdictional arguments their clients had before making an incomplete motion to dismiss. I would suggest they be more careful the next time.

Because the Complaint sufficiently alleges facts tending to show that TRU and Smyres transacted business in New York so as to confer jurisdiction in this action pursuant to CPLR 302, it is not necessary for the Court to hold a hearing and make findings on the contested claim that TRU and Smyres do business in New York through a New York-based company called Textbookdepot.com.

The situation is far more complicated when we consider Buckeye and UBX. The Complaint contains not a single allegation of fact tending to show either that Buckeye or UBX has transacted any business in illicit or infringing textbooks in New York for purposes of specific jurisdiction under CPLR 302. Buckeye and UBX are campus-based bookstores serving the students of one school – Ohio State. Of course, that august institution enrolls students from every State in the Union, including New York – which means Buckeye and UBX may well have subjected themselves to jurisdiction in New York by selling books into New York. However, there is no allegation in the Complaint, and no evidence appended to the opposition to the motion, demonstrating that either Buckeye or UBX has ever shipped a single book into New York State. Though they bear the burden of proof, plaintiffs have not asked to take the

jurisdictional discovery that would establish this point one way or the other.

I gather that plaintiffs want this court to infer that Buckeye and UBX are subject to jurisdiction in New York because they are alter egos of TRU and Smyres. If that is their strategy, plaintiffs have not come close to meeting their burden of proof.

I have attempted to tease out any allegations in the Complaint that would suggest that the activities of TRU, and of Smyres in relation to TRU, should be attributed to Buckeye and UBX. The Complaint alleges that Buckeye, UBX and TRU share a "common source of stock, which is purchased and assembled by defendant Smyres, who is the principal of defendants..." (Cplt. ¶ 87.) Smyres allegedly travels to Asia, buys the pirate or unauthorized editions, and allegedly ships them to Buckeye. (Cplt. ¶ 88.) Smyres is alleged to have been the "moving, active conscious force behind the infringing activity," and each defendant is alleged to have "knowingly supervised and participated in such infringing and illegal activity" and to have "a direct financial interest in" that activity. (Cplt. ¶ 90.) Finally, all four defendants are also alleged to have conspired together to violate plaintiffs' copyrights. (Cplt. ¶ 93.)

Unfortunately for plaintiffs, common ownership and sharing of inventory is insufficient, in the absence of allegations that would demonstrate that Buckeye and UBX were "mere departments" of TRU, for the Court to attribute the New York business transactions of TRU to Buckeye or to UBX. See Beech, 751 F.2d at 120-22 (2d Cir.1984); Palmieri v. Estefan, 793 F. Supp. 1182, 1187 (S.D.N.Y. 1992).[4] Plaintiffs have not sought the sort of discovery that would allow this Court to attribute the New York business activities of TRU and Smyres to Buckeye or UBX on such a theory.

The Complaint alleges that Buckeye and UBX are, by their own admission, "sister stores" that share a common address. Those facts, without more, are insufficient to conflate Buckeye and UBX for jurisdictional purposes. Beech, 751 F.2d at 120. Even if they were sufficient, those allegations do nothing to conflate Buckeye and UBX with TRU – which never represented itself to be a "sister" anything, and which has a different address from the other two corporations.

The Complaint alleges that, on one occasion, UBX returned books to plaintiff Thomson for refunds, including books that were not authentic copies of the copyrighted works. (Cplt. ¶ 78). It also alleges that Smyres controlled the refund practices of UBX. (Cplt. ¶ 60.) However, the Complaint does not specifically allege that these returned books were sent into New York. Therefore, this instance cannot serve as a basis for asserting transactional personal jurisdiction over UBX, or over Smyres in relation to the book return/passing off/fraudulent activities of UBX.

---

[4] For jurisdictional purposes, "it makes no difference ... if the local entity is the parent and the foreign corporation is the subsidiary." Palmieri v. Estefan, 793 F. Supp. 1182, 1187 (S.D.N.Y. 1992) (citing Saraceno v. S.C. Johnson & Son, Inc., 83 F.R.D. 65, 67 n. 5 (S.D.N.Y.1979)).

The Complaint also alleges that both Buckeye and UBX (and Smyres, who controlled their refund practices) returned such an abnormally high percentage of books to plaintiffs that they must have included books that were either pirated or unauthorized foreign editions of copyrighted texts. (Cplt. ¶¶ 79-81). However, this merits-based allegation tends to show that Buckeye and UBX may have engaged in the nefarious act with which plaintiffs charge them. It does not give rise to any inference that Buckeye and UBX either did or transacted business in New York. Therefore, it is not legally sufficient to confer jurisdiction at the pre-discovery stage.

Finally, in their opposing affidavits (but not in the Complaint), plaintiffs rely on information obtained from an import/trade date-provision company called PIERS. According to this third party source of information, Smyres and the other defendants in this action have imported 66 large shipments of textbooks into the United States from Asian countries that have been the source of pirated gray market editions. Allegedly, Smyres, Buckeye and TRU (but not UBX, which is a used book store) were listed as the consignee on the various shipments. A review of the Piers Report printout, which is Ex. C to the Essig Affidavit, reveals that almost all the shipments were consigned to Buckeye, with a few going to Smyres personally and a few others to an entity called Book Dog Books, which is located at the same address as TRU. One shipment allegedly was sent to Smyres, Buckeye and TRU at TRU's address. Ten of the sixty-six shipments entered the country through the Port of New York.

None of this, of course, appears in the complaint. But assuming all of it to be true, it does not establish that Buckeye (let alone UBX, whose name appears on nothing in the Piers Report) are subject to the jurisdiction of the courts of New York. It appears that the books were ordered from Ohio and were received in Ohio by Ohio entities. Yes, some of them passed through New York on their way to Ohio, but if every entity who received imported goods that were shipped through the Port of New York were deemed to be doing or transacting business in New York, the jurisdictional reach of this state would be all but unlimited. Plaintiffs cite not a single case that has upheld this as a theory of either general or specific jurisdiction, and Buckeye and UBX cannot be said to have purposefully availed themselves of conducting activities in New York by accepting books that passed through New York during shipment. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).

In short, as to Buckeye and UBX, plaintiffs have failed to meet their burden of proving that these entities can be sued in New York. Therefore, the complaint is dismissed as against them, without prejudice.

Because the complaint has been dismissed without prejudice, plaintiffs can do one of two things. They can refile their complaint against Buckeye and UBX here in New York, with better jurisdictional allegations. Or it can mean that plaintiffs – recognizing that extensive and time consuming jurisdictional discovery will be required in order to sustain a claim of jurisdiction in this court, and knowing that a motion to dismiss or transfer will be forthcoming based on the Terms and Conditions of the internet sales that are the basis for asserting jurisdiction over TRU and Smyres – will refile their complaint against all defendants in the Southern District of Ohio,

where they are clearly amenable to suit.

This constitutes the decision and order of the Court.

Dated: January 16, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL