UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CENGAGE LEARNING, INC.
(f/k/a THOMSON LEARNING, INC.)
PEARSON EDUCATION, INC.
JOHN WILEY & SONS, INC., and
THE MCGRAW-HILL COMPANIES, INC.,

                                        Plaintiffs,

                    -against-

TEXTBOOKSRUS.COM., LLC, and
PHILIP SMYRES,

                                        Defendants.

------------------------------------------------------------x

SENT TO CHAMBERS
FOR REVIEW

MAR 3 1 2008

U.S.D.C.S.D.N.Y.
CASHIERS

07 Civ. 8540 (CM)(THK)

**AMENDED
COMPLAINT**

**TRIAL BY JURY
DEMANDED**

## Introduction

1.      This case arises from the willful violation of the intellectual property

rights of four book publishers, Cengage Learning, Inc (formerly Thomson Learning, Inc.

and referred to herein as "Thomson"[1]), Pearson Education, Inc. ("Pearson"), John Wiley

& Sons, Inc. ("Wiley"), and The McGraw-Hill Companies, Inc. ("McGraw-Hill")

(collectively, the "plaintiffs" or the "Publishers"), by an online textbook retail company

and its principal.  Upon information and belief, Textbooksrus.com, LLC ("TRU"), and

Philip Smyres ("Smyres") (collectively, the "defendants"), purchased, imported,

distributed and sold what they knew to be illegal, pirated (i.e., counterfeit) copies of the

---

1 On or about August 31, 2007, Thomson Learning, Inc. changed its corporate name to Cengage Learning,
Inc.  At all relevant times herein, Thomson owned, or (in the case of the THOMSON LEARNING
trademark) maintained an exclusive license to, all rights, title and interest in the Thomson trademarks and
copyrights detailed herein.  All such rights, title and interest in such intellectual property have remained
with the same company; only the company's name has changed.

books of Wiley (the "Pirated Copies"). Defendants also imported, distributed and sold lower-cost foreign-edition reprints of Cengage, Pearson, Wiley, and McGraw-Hill books not intended or authorized for resale in the United States (the "Foreign Editions") (and together with the Pirated Copies, the "Infringing Works").

As set forth below, defendants, who are affiliated with and/or owners of book retail companies that are, or in certain cases used to be, customers of plaintiffs, deliberately sought out, purchased and imported an unknown number of Pirated Copies and/or Foreign Editions of plaintiffs' textbooks, bearing plaintiffs' registered and distinctive trademarks, from foreign countries known for their rampant textbook piracy. Defendants then, as set forth in further detail below, "restickered" the Foreign Editions so they would appear to be legitimate U.S. authorized works, and sold or otherwise distributed all of the Infringing Works from TRU's internet website, thus infringing upon plaintiffs' copyright and trademark interests. Defendants affiliated company, UBX, under Smyres' control and supervision, also returned Pirated Copies to at least one plaintiff, deliberately and falsely passing them off as legitimate books that UBX originally purchased from that plaintiff, in order to fraudulently obtain a full refund from that Publisher.

## The Parties

1.      Plaintiff Cengage is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 200 First Stamford Place, 4th Floor, Stamford, Connecticut 06902.

2.      Plaintiff Pearson is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at One Lake Street, Upper Saddle River, New Jersey 07458.

3.      Plaintiff Wiley is a corporation duly organized and existing under the laws of the State of New York with a principal place of business at 111 River Street, Hoboken, New Jersey 07030.

4.      Plaintiff McGraw-Hill is a corporation duly organized and existing under the laws of the State of New York with its principal place of business at 1221 Avenue of the Americas, New York, New York, 10020.

5.      Plaintiffs are global leaders in providing all manner of educational books and publications and integrated information solutions to higher education, corporate, government and professional customers.

6.      Upon information and belief, defendant TRU is a business operating in the State of Ohio, which, upon information and belief, operates through an internet website, www.textbooksrus.com, which solicits internet users to buy new and used textbooks through its "Textbooks" link, and lists its physical location as 2340 Wood Avenue, Columbus, Ohio, 43221. Defendant TRU ships books throughout the United States, including the Southern District of New York.

7.      Defendant Smyres is an individual who, upon information and belief, resides at 10 East 15th Avenue, Columbus, Ohio, 43201. Upon Information and belief, Smyres is the principal of defendants TRU, and is responsible for ordering, purchasing, importing, distributing and selling defendants' stock, and is responsible for all decision-

making related thereto.  Upon information and belief, Smyres personally organizes the purchase, importation, and sale of stock for TRU.

8.      Upon information and belief, TRU is affiliated with two companies Buckeye Books ("Buckeye"), and Used Book Exchange ("UBX") which are also located in Ohio, and which are also owned and operated by Smyres.  Upon information and belief, TRU shares and obtains its sources of storage and stock with and from Buckeye and UBX.

## Jurisdiction and Venue

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), 15 U.S.C. § 1121, and under 28 U.S.C. 1332(a), by virtue of the diversity of the parties' citizenship, the value of the matter in controversy exceeding $75,000, exclusive of interests and costs.

10.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) because, upon information and belief, a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

## The Facts

### PLAINTIFFS' DISTINGUISHED REPUTATIONS AND THEIR PUBLICATION OF HIGHER EDUCATION TEXTBOOKS

11.     Cengage is among the world's largest providers of tailored learning solutions.  In the academic marketplace, Cengage serves secondary, post-secondary and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments.  Cengage products and services are sold throughout the world,

through direct channels and via a worldwide network of distributors. Cengage invests significant resources annually in the worldwide advertisement and promotion of its goods and services under all of its marks.

12.    Pearson is a renowned global publisher of educational books in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage. With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, Pearson Education provides quality content, assessment tools, and educational services in all media.

13.    Wiley, which has been in continuous operation for 200 years, is a global publisher of print and electronic products, specializing in scientific, technical, and medical books and journals, professional and consumer books and subscription services, and textbooks and other educational materials for undergraduate, graduate, advanced placement students, educators and lifelong learners.

14.    McGraw-Hill is a global publisher and lifelong learning partner to students and teachers of all kinds and addresses virtually every aspect of the education market from pre-kindergarten through professional learning, using traditional materials, online learning and multimedia tools. McGraw-Hill is also a leading provider of reference and trade publishing for the medical, business, engineering and other professions.

15.    Plaintiffs' higher education businesses are among their core business operations respectively.

16.     Plaintiffs' higher education businesses use multiple channels of distribution, including retail bookstores, online booksellers, sales to all forms of wholesalers, and direct sales to schools, students and other consumers.

17.     Plaintiffs use their alliances, affiliations and relationships with wholesalers, distributors and retailers as part of their respective overall sales, marketing and distribution plans. Those plans expand plaintiffs' geographic reach to actual and potential customers, and allow plaintiffs to operate across various mediums and formats.

18.     Plaintiffs invest heavily in their book publishing programs.  Each year they incur substantial costs for author royalties and other costs of content creation and licensing, copy editing and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of editorial offices.

19.     The revenue from plaintiffs' respective publications represents the majority - in most cases the vast majority - of plaintiffs' respective annual revenues, and is therefore critical to their financial health and continued operation.

20.     Plaintiffs suffer serious financial injury when their copyrights and trademarks are infringed.  A substantial decline in their income could cause plaintiffs to cease publication of one or more deserving books.  This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving works.

21.     Both publishers and authors alike are deprived of income when their books are unlawfully copied, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

## THE BOOK PUBLISHING
## AND RETAIL INDUSTRY

22.    In a typical chain of supply within the book publishing/retail industry, wholesalers, distributors and physical and online retailers obtain their stock of books directly from publishers and then sell those books to other book retailers and customers.

23.    Many actual and potential customers of plaintiffs purchase their books from online retailers.  They do so for many reasons. For example, if a customer wishes to purchase a number of titles printed by different publishers, an online retailer would be in a better position to provide that customer with access to books from across the publishing industry.  Moreover, customers who purchase their books online often benefit from faster delivery of stock and simpler ordering processes.

24.    In recognition of the important role that online and other traditional retailers play in the book publishing and retail industries, publishers sell their books to retailers at prices lower than the retail price when they purchase books from the publishers in bulk.  Upon information and belief, many legitimate online retailers who sell textbooks in large quantities purchase their stock directly from publishers to take advantage of such pricing discounts, and are then free to mark-up the cost of their products for profit.

25.    Selling books online can be enormously profitable for online retailers.  In recent years, as the use of the internet has become more widespread, online purchases by students and other potential customers have increased significantly as consumers have searched for faster and expanded access to books from across the publishing industry, inexpensive prices, faster deliveries, and ordering simplicity.

26.    Given the virtually limitless number of consumers with access to the internet, it is of crucial importance to publishers and authors that online retailers only sell legitimate textbook products.

27.    Plaintiffs often create different versions of their educational titles, depending on the intended ultimate place of sale. The sale of Foreign Editions, for instance, is normally limited to specified foreign countries. Foreign Editions differ in material ways from the U.S. editions. They are manufactured abroad, are often printed on thinner paper, have different cover and jacket designs, have lower quality binding, are printed in fewer colors, if any, and are generally available at lower prices than their U.S. counterparts. Also, Foreign Editions often will not be accompanied by supplements such as CD-ROMs, study guides, or access to accompanying electronic materials that are often included with authorized U.S. editions. The Publishers create the materially different Foreign Editions in order to permit the Publishers to offer educational materials to students and consumers in developing countries that might not otherwise have meaningful access to such materials. Because of the significant difference in quality, the sale of Foreign Editions is restricted to certain developing foreign countries, where they can be sold at a significantly lower price. To that end, the Publishers' Foreign Editions are marked to indicate their low-cost by a legend indicating that the title is a "Low Price Edition" and/or authorized for sale only in a particular country or region, or some other similar language, and have different ISBNs than their U.S. counterparts.

28.    Foreign Editions are not intended or authorized for resale in the United States. If Foreign Editions are imported and sold in the U.S., plaintiffs' customers will unwittingly be purchasing books of significantly different quality than plaintiffs'

authentic U.S. edition works, damaging consumer satisfaction, consumer confidence in plaintiffs' works, and plaintiffs' reputation.

## PLAINTIFFS' FEDERALLY REGISTERED COPYRIGHTS AND TRADEMARKS

29.    Cengage duly registered its copyright in: 1) *Modern Physics for Scientists and Engineers*, by Stephen T. Thornton and Andrew Rex (3rd Edition) (ISBN 0534417817) (Reg. No. TX-6-400-354) on August 16, 2006; 2) *Home, School & Community Relations: A Guide to Working with Families*, by Carol Gestwicki (4th Edition) (ISBN 0766803562) (Reg. No. TX-5-074-070) on October 19, 1999; 3) *Global Communication*, by Yahya Kamalipour (2nd Edition) (ISBN 049505027X) (Reg. No. TX-6-375-868) on May 25, 2006; 4) *The Practice of Social Research*, by Earl Babbie (11th Edition) (ISBN 0495093254) (Reg. No. TX-6-358-584) on May 25, 2006); 5) *Statistical Inference*, by George Casella and Roger L. Berger (2nd Edition) (ISBN 0534243126) (Reg. No. TX-5-418-275) on July 16, 2001; 6) *Organic Chemistry* (Reg. No. TX-5-418-275) on April 5, 2007; and 7) *Professional Selling*, (4th Edition), (ISBN 032453809 X)(Reg. No. TX-6-318-711) (collectively, the "Cengage Authentic Works").

30.    Pearson duly registered its copyright in: 1) *Psychological Consultation and Collaboration: Introduction to Theory and Practice*, by Duane Brown, Walter B. Pryzwansky and Anne C. Schulte (6th Edition) (ISBN 0205411797) (Reg. No. TX 6 150-662) on March 31, 2005; 2) *Instruction of Students with Severe Disabilities*, by Martha E. Snell and Fredda Brown (6th Edition) (ISBN 0131143352) (Reg. No. TX 6-326-392) on March 16, 2006; 3) *Assessment Procedures for Counselors and Helping Professionals*, by Robert Drummond and Karyn Dayle Jones (6th Edition) (ISBN 0131707841) (Reg.

No. TX-6-323-750) on March 15, 2006; 4) *The Principalship: A Reflective Practice Perspective*, by Thomas J. Sergiovanni (5th Edition) (ISBN 0205457231) (Reg. No. TX 6 171-304) on April 22, 2005; 5) *Organizational Behavior*, by Stephen P. Robbins, (11th Edition) (ISBN 0131914359) (Reg. No. TX-6-103-180) on February 1, 2005; 6) *Microeconomics*, by Robert S. Pindyck and Daniel L. Rubinfeld, (6th Edition) (ISBN 0130084611) (Reg. No. TX-6-156-330) on March 21, 2005; and 7) *Transport Processes and Separation Process Principles*, by Christie J. Geankoplis (4th Edition) (ISBN 0131013674) (Reg. No. TX-5-717-312) on March 24, 2003 (collectively, the "Pearson Authentic Works").

31.    Wiley duly registered its copyright in: 1) *Marketing Research*, by David A. Aaker, V. Kumar and George S. Day (9th Edition) (ISBN 0470050764) (Reg. No. TX-6-569-690) on April 23, 2007; 2) *Applied Statistics and Probability for Engineers*, by Douglas C. Montgomery and George C. Runger (4th Edition), (ISBN 0471745898) (Reg. No. TX 6-428-380) on August 25, 2006; 3) *Control Systems Engineering*, by Norman S. Nise (4th Edition), (ISBN 0471452432) (Reg. No. TX-5-800-945) and  4) *Material Science and Engineering: An Introduction*, by William D. Callister, (7th Edition) (ISBN 0471736961), (Reg. No. TX 6-405-304) on June 19, 2006 (collectively, the "Wiley Authentic Works").

32.    McGraw-Hill duly registered its copyright in 1) *Psychology: The Science of Mind and Behavior*, by Michael W. Passer and Ronald E. Smith (2nd Edition) (ISBN 0071110542) (Reg. No. TX-6-402-511) on June 22, 2006, and 2) *Economics*, by Paul Anthony Samuelson (ISBN 0072872055) (the "McGraw-Hill Authentic Work") (The

Cengage, Pearson, Wiley and McGraw-Hill Authentic Works are collectively referred to in this Complaint as the "Publishers' Authentic Works" or the "Authentic Works")

33.    The Cengage Authentic Works bear the "ITP" and "PWS" trademark designs, which Thomson duly registered with the USPTO under Registration Numbers 1,866,136 and 2183184/ 2,146,913, respectively.  Both the "ITP" and "PWS" designs are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

34.    Cengage's trademarks, as described above, are distinctive and arbitrary. Cengage, formerly known as Thomson Learning, has invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with the above-described marks.

35.    The Pearson Authentic Works bear the "Pearson" word mark, which Pearson PLC, Pearson's ultimate parent company, is the owner of, and Pearson is the exclusive licensee with accompanying right and duty to protect and enforce the rights therein, and which is duly registered on the Principal Register of the USPTO under U.S. Registration Numbers. 2,599,724 / 2,600,081/ 2,652,792 / 2,679,355 / 2,691,830 / 2,694,359, all of which are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

36.    Pearson's trademarks, as described above, are distinctive and arbitrary. Pearson has invested decades of effort in building its reputation of quality educational and literary publishing, which consumers associate with the above-described mark.

37.    The Wiley Authentic Works bear the "Wiley" trademark and service mark, which Wiley has duly registered on the Principal Register of the USPTO under U.S. Registration Numbers 1,003,988/2,159,987.  The Wiley Authentic Works also bear

the "JW" design, which Wiley has duly registered with the USPTO under Registration Number 2,168,941. Both the "Wiley" word mark and "JW" design are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

38.    Wiley's trademarks, as described above, are distinctive and arbitrary. Wiley has invested two hundred years of effort in building a reputation of quality in the publishing industry, which consumers associate with the above-described marks.

39.    The McGraw-Hill Authentic Work bears the "McGraw-Hill" trademark and service mark, which McGraw-Hill has duly registered on the Principal Register of the USPTO under U.S. Registration Number 1,350,345, and the trademark and service mark "The McGraw-Hill Companies," which McGraw-Hill has duly registered on the USPTO under U.S. Registration Number 3,103,212.

40.    McGraw-Hill's trademarks, as described above, are distinctive and arbitrary. McGraw-Hill has invested over a century's worth of effort in building a reputation of quality in the publishing industry, which consumers associate with the above-described mark.

## DEFENDANTS' SALES OF COUNTERFEIT
## AND GREY MARKET TEXTBOOKS

41.    On September 13, 2006, Cengage placed an order on the TRU e-commerce website for the Cengage Authentic Work, *Modern Physics for Scientists and Engineers*, by Stephen T. Thornton and Andrew Rex. On May 20, 2007, Cengage placed an order on the TRU e-commerce website for Cengage Authentic Work, *Global Communication*, by Yahya Kamalipour. On May 22, 2007 and May 30, 2007, Cengage

placed orders on the TRU e-commerce website for the Cengage Authentic Work, *Home, School & Community Relations: A Guide to Working with Families*, by Carol Gestwicki.

42.    On or around September 17, 2006, May 24, 2007, May 26, 2007 and June 3, 2007, respectively, TRU delivered the above titles to Cengage. Upon Cengage's analysis of the titles, it determined that the delivered books were all Pirated Copies of Cengage's Authentic Works, bearing Cengage's trademarks, and falsely stating that they were legitimately manufactured in the United States.

43.    On August 6, 2007, Cengage placed an order on the TRU e-commerce website for the Cengage Authentic Work, *Statistical Inference*, by George Casella and Roger L. Berger.

44.    On August 21, 2007, the above title was delivered to Cengage. Upon Cengage's analysis of the title, it determined that the delivered book was a Foreign Edition of the Cengage Authentic Work, intended and authorized for sale in Asia only.

45.    Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising those territorial restrictions governing the distribution and sale of the above title, as reflected on its back cover.  Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the above title, misrepresenting that it was manufactured in the United States, by placing a laser printed bar code along with a U.S. ISBN covering the Asia ISBN and bar code.

46.    On November 7, 2007, Cengage placed an order from TRU through the New York – based company, ValoreBooks.com;  for the following Cengage Authentic

Work: *Contemporary Economics*, by Robert Carbaurgh.  On or about November 9, 2007,

TRU delivered the above title to Cengage in New York.  Upon Cengage's analysis of the

title, it determined that the delivered book was a Foreign Edition of the Cengage

Authentic Work, intended and authorized for sale outside the United States only.

47.    On March 10, 2008, Cengage placed an order from TRU for the following

Cengage Authentic Works: 1) *Organic Chemistry*, and 2) *Professional Selling*.  On or

about March 14, 2008, TRU delivered the above titles to Cengage in New York.  Upon

Cengage's analysis of the titles, it determined that the delivered books were Foreign

Editions of the Cengage Authentic Works, intended and authorized for sale outside the

United States only.

48.    On September 20, 2006, Pearson placed an order on the TRU e-commerce

website for the following Pearson Authentic Works: 1) *Psychological Consultation and*

*Collaboration: Introduction to Theory and Practice*, by Duane Brown, Walter B.

Pryzwansky and Anne C. Schulte; 2) *Instruction of Students with Severe Disabilities*, by

Martha E. Snell and Fredda Brown; 3) *Assessment Procedures for Counselors and*

*Helping Professionals*, by Robert Drummond and Karyn Dayle Jones; and 4) *The*

*Principalship: A Reflective Practice Perspective*, by Thomas J. Sergiovanni.

49.    On September 23, 2006, TRU delivered the above titles to Pearson.  Upon

Pearson's analysis of the titles, it determined that the delivered books were all Pirated

copies of Pearson's Authentic Works, bearing Pearson's trademarks, and falsely stating

that they were legitimately manufactured in the United States, with the exception of

*Assessment Procedures for Counselors and Helping Professionals*, by Robert Drummond

and Karyn Dayle Jones, which Pearson determined to be the only legitimate copy delivered by TRU.

50.     On August 3, 2007, Pearson placed an order on the TRU e-commerce website for the following Pearson Authentic Works:  1) *Organizational Behavior*, by Stephen P. Robbins and Tim A. Judge; 2) *Microeconomics*, by Robert S. Pindyck and Daniel L. Rubinfeld; and 3) *Transport Processes and Separation Process Principles*, by Christie J. Geankoplis.

51.     On August 8, 2007, TRU delivered the above titles to Pearson into New York.  Upon Pearson's analysis of the titles, it determined that the delivered books were all Foreign Editions of the Pearson Authentic Works, intended and authorized for sale in Asia only.

52.     Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Editions, thus disguising those territorial restrictions governing the distribution and sale of the above titles, as reflected on their back covers.  Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the above titles, misrepresenting that they were manufactured in the United States, by placing a laser printed bar code along with a U.S. ISBN covering the Asia ISBN and bar code.

53.     On September 30, 2006, Wiley placed an order on the TRU e-commerce website for the Wiley Authentic Work, *Applied Statistics and Probability for Engineers*, by Montgomery and Runger.  On April 10, 2007, Wiley placed an order on the TRU e-

commerce website for the Wiley Authentic Work *Marketing Research*, by David A.

Aaker, V. Kumar and George S. Day.

54.    On October 4, 2006, and April 13, 2007, respectively, TRU delivered the

above titles to Wiley into New York.  Upon Wiley's analysis of the *Applied Statistics*

title, it determined that the copy purchased from TRU was a Foreign Edition of the Wiley

Authentic Work, intended and authorized for sale in Asia only.  Upon Wiley's analysis of

the *Marketing Research* title, it determined that the delivered book was a Pirated Copy of

Wiley's Authentic Work, bearing Wiley's trademarks, and falsely stating that it was

legitimately manufactured in the United States.

55.    On June 1, 2007, Wiley placed another order on the TRU e-commerce

website for the Wiley Authentic Works, *Marketing Research*, by David A. Aaker, V.

Kumar and George S. Day, and *Applied Statistics and Probability for Engineers*, by

Douglas C. Montgomery and George C. Runger.

56.    On June 6, 2007, TRU delivered the above titles into New York, to Wiley.

Upon Wiley's analysis of the *Marketing Research* title, it determined that the delivered

book was another Pirated Copy of Wiley's Authentic Work, bearing Wiley's trademarks,

and falsely stating that it was legitimately manufactured in the United States.  Upon

Wiley's analysis of the *Applied Statistics* title, it determined that the copy purchased from

TRU was another Foreign Edition of the Wiley Authentic Work, intended and authorized

for sale in Asia only.

57.    Upon information and belief, defendant TRU deliberately intended to

confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the

clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising,

those territorial restrictions governing the distribution and sale of the *Applied Statistics* title, as reflected on its back cover.  Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the *Applied Statistics* title, misrepresenting that the title was manufactured in the United States, by placing a laser printed bar code along with a U.S. ISBN covering the Asia ISBN and bar code.

58.    On August 2, 2007, Wiley placed an order on the TRU e-commerce website for the Wiley Authentic Work, *Control Systems Engineering,* by Norman S. Nise.

59.    On or about August 4, 2007, TRU delivered the above title to Wiley, into New York. Upon Wiley's analysis of the title, it determined that the delivered book was a Foreign Edition of the Wiley Authentic Work, intended and authorized for sale in Asia only.

60.    Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising, those territorial restrictions governing the distribution and sale of the *Control Systems Engineering* title, as reflected on its back and front cover.  Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the *Control Systems Engineering* title, misrepresenting that the title was manufactured in the United States, by placing a laser printed bar code along with a U.S. ISBN covering the Asia ISBN and bar code.

61.    On October 31, 2007, Wiley placed an order on the TRU and ValoreBooks.com e-commerce website for the Wiley Authentic Works: *Control Systems*

*Engineering*, by Norman S. Nice, and material Science and Engineering, by Williams D. Callister.

62.     Shortly thereafter, the above title was delivered to Wiley in New York. Upon Wiley's analysis of the title, it determined that the delivered book was a Foreign Edition of the Wiley Authentic Work, intended and authorized for sale in Asia only.

63.     Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising, those territorial restrictions governing the distribution and sale of the *Applied Statistics* title, as reflected on its back cover.  Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the *Applied Statistics* title, misrepresenting that the title was manufactured in the United States, by placing a laser printed bar code along with a U.S. ISBN covering the Asia ISBN and bar code.

64.     On December 18, 2007, Wiley placed an order on the TRU and Abebooks.com e-commerce websites for the Wiley Authentic Work, *Applied Statistics and Probability for Engineers*, by Douglas C. Montgomery and George C. Runger.

65.     Shortly thereafter, TRU delivered the above titles into New York, to Wiley.  Upon Wiley's analysis of the *Applied Statistics* title, it determined that the copy purchased from TRU was another Foreign Edition of the Wiley Authentic Work, intended and authorized for sale in Asia only.

66.     The *Applied Statistics* Foreign Edition title did not have a sticker bearing the name "Textbooks R Us" over the marked territorial restrictions.  The *Applied Statistics* title was accompanied by a laser printed bar code along with a U.S. ISBN.  The

previous Foreign Copies sent to Wiley had similar laser printed bar codes covering the Asia ISBN's and bar codes.

67.    On or about August 1, 2007, McGraw-Hill placed an order on the TRU e-commerce website for the McGraw-Hill Authentic Work, *Psychology: The Science of Mind and Behavior,* by Michael W. Passer and Ronald E. Smith.

68.    On August 7, 2007, TRU delivered the above title to McGraw-Hill.  Upon McGraw-Hill's analysis of the title, it determined that the delivered book was a Foreign Edition of the McGraw-Hill Authentic Work, manufactured in India, and intended and authorized for sale in India and certain neighboring territories only.

69.    Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising, those territorial restrictions governing the distribution and sale of the *Psychology* title, as reflected on its back cover.  Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the *Psychology* title and to misrepresent that the title was manufactured in the United States by placing a laser printed bar code along with a U.S. ISBN covering the Indian ISBN and bar code.

70.    On November 7, McGraw-Hill placed an order (Economics, by Paul Anthony Samuelson) on the TRU e-commerce website for the McGraw-Hill Authentic Work, *Psychology: The Science of Mind and Behavior,* by Michael W. Passer and Ronald E. Smith.

71.    On August 7, 2007, TRU delivered the above title to McGraw-Hill.  Upon McGraw-Hill's analysis of the title, it determined that the delivered book was a Foreign

Edition of the McGraw-Hill Authentic Work, manufactured in India, and intended and authorized for sale in India and certain neighboring territories only.

72.    Upon information and belief, defendant TRU deliberately intended to confuse its purchasers by placing stickers bearing the name "Textbooks R Us" over the clearly printed and marked territorial restrictions on the Foreign Edition, thus disguising, those territorial restrictions governing the distribution and sale of the *Psychology* title, as reflected on its back cover.  Upon information and belief, TRU also deliberately intended to confuse its purchasers as to the place of manufacture of the *Psychology* title and to misrepresent that the title was manufactured in the United States by placing a laser printed bar code along with a U.S. ISBN covering the Indian ISBN and bar code.

73.    Upon information and belief, all these actions were intended to, and were successful in, disguising the fact that the Publishers' Foreign Editions were of a materially different quality than the standard U.S. editions and that they are not intended for distribution and sale in the United States.

74.    Although many of the Pirated Copies sold by TRU are of inferior quality compared to the Publishers' Authentic Works, most of the Pirated Copies appear to be plaintiffs' Authentic Works, such that actual and prospective purchasers, and others who are familiar with Cengage, Pearson and Wiley authentic products, and the related trademarks, are likely to believe that the Pirated Copies are plaintiffs' Authentic Works. This weakens, blurs, and tarnishes plaintiffs' respective trademarks.  It further injures plaintiffs' business reputations, by causing their trademarks and the goodwill associated with them to be confused or mistakenly associated with a group or series of pirated textbooks.

75.    Despite the material differences between the Publishers' U.S. editions and the Foreign Editions – which are manufactured in and authorized for sale in foreign countries only – at first glance by an unsuspecting consumer, such books would appear to be substantially similar to the Publishers' Authentic Works.  This appearance is emphasized by defendants' intentional, unlawful and deceptive "restickering" of plaintiffs' Foreign Edition's territorial restriction legends and foreign ISBNs and bar codes.  Accordingly, actual and prospective purchasers, and others who are familiar with plaintiffs' products and trademarks, are likely to believe that the Foreign Edition are plaintiffs' authentic U.S. publications.   This weakens, blurs, and tarnishes plaintiffs' respective trademarks in the U.S.  In addition to injuring consumers, it further injures plaintiffs' U.S. business reputations, by causing their trademarks and the goodwill associated with them to be confused or mistakenly associated with a group or series of textbooks of a materially different and lesser quality that are not intended for sale in the United States, as alleged above.

### DEFENDANTS' RETURN OF
### PLAINTIFFS' PUBLICATIONS

76.    In the last three calendar years, and since the beginning of their relationships as customers of the Publishers, UBX, Buckeye and defendant Smyres have regularly sent unusually large numbers of books to some of the plaintiffs, purportedly all returns of the such plaintiffs' Authentic Works, for a full refund, taking advantage of the Publishers' policy of providing full refunds for items returned by customers.

77.    In returning books to the Publishers for full refunds during the above time period, UBX, Buckeye and defendant Smyres represented that all of the books which

they sent to the plaintiffs were the true and original Authentic Works that they originally purchased from the Publishers, and that UBX and Buckeye were unable to sell those books in the ordinary course of business. Upon information and belief, UBX, Buckeye and defendant Smyres intentionally failed to disclose to plaintiffs that at least some of the books they were purportedly returning were not those that were originally purchased from the Publishers, but that some books were in fact Pirated Copies of the same titles.

78.    On April 16, 2007, as part of a larger return, UBX sent to Cengage five copies of Cengage's Authentic Work, *The Practice of Social Research*, by Earl Babbie, purportedly all returns of one of UBX's original orders of Cengage's Authentic Works, for a full refund. Three of the books sent to Cengage for a refund were determined to be Pirated Copies of *The Practice of Social Research* Authentic Work. They were not the original and authentic versions of Cengage's *Practice of Social Research* work, as UBX and its principal defendant, Smyres, represented to plaintiffs on the above date.

79.    Upon information and belief, the unusually high percentages of purportedly returned books from UBX and Buckeye to the Publishers, coupled with the Pirated Copies recently found in one of defendant UBX's returns to Cengage, indicates that defendants' affiliated companies, UBX and Buckeye, are engaging in a practice of sending Pirated Copies to certain of the plaintiffs, deliberately passing them off as the legitimate U.S. edition books originally purchased from the Publishers, in order to improperly obtain a full refund for the books.

80.    Defendant Smyres, as the principal of UBX and Buckeye, had actual knowledge of, managed, orchestrated and pursued the fraudulent returns alleged above.

## DEFENDANTS' WILLFUL INFRINGEMENT

## OF PLAINTIFFS' COPYRIGHTS AND OTHER
## INTELLECTUAL PROPERTY RIGHTS

81.     Upon information and belief, defendants frequently purchase Infringing

Works from countries in Asia such as Taiwan, Thailand, Malaysia and Singapore, import

them to the United States, and sell them to consumers in the United States without the

Publishers' authorization.  Defendants conduct such purchases, imputations and sales

without regard to the authenticity of the purchased works or for plaintiff's intellectual

property rights.  Upon information and belief, when defendants sell imported works that

are lower cost Foreign Editions of the plaintiff's Authentic Works, as opposed to Pirated

Copies, defendants routinely and intentionally obscure the text indicating the territorial

sales restrictions applicable to the books, by covering such language with stickers and

covering foreign ISBNs with laser printed bar codes and U.S. ISBNs, such that many

intentional indications that the Foreign Editions are materially different from the U.S.

editions, and all notifications that those particular books are not intended for sale in the

U.S. have been completely masked, thus deceiving consumers in that regard.  Upon

information and belief, defendants intentionally use this practice of "re-stickering" to

falsely advertise the Infringing Works as authentic United States editions, using fake and

misleading graphics, photographs, and ISBN numbers associated with the respective

Authentic Works, in an effort to mislead consumers into believing they are buying the

Publishers' Authentic U.S. editions.

82.     Upon information and belief, defendants also routinely resell the

Infringing Works on or through TRU's websites and through the websites of other

authorized entities, including ValoreBooks.com and Abebooks.com.

83.     Upon information and belief, TRU shares its source of stock with its affiliate companies, Buckeye and UBX. Upon information and belief, that stock is purchased and assembled by defendant Smyres, who is the principal of defendant TRU and of UBX and Buckeye.

84.     Upon information and belief, Smyres regularly personally travels to countries in Asia to seek out and purchase pirated U.S. edition and Foreign Edition books at a significantly lower cost, and which are normally Infringing Works, and then imports such works into the United States.

85.     Upon information and belief, in most instances, Smyres personally travels to Asia and sends Pirated Copies and Foreign Editions purchased from Asia, addressed directly to himself, defendant TRU, and/or TRU's affiliate companies, Buckeye and UBX.

86.     Plaintiffs have never authorized defendants to import or distribute Foreign Editions of their Authentic Works in the U.S., as they are not intended for sale to U.S. consumers, and are materially different than the genuine and authorized U.S. versions, as alleged above.

87.     Upon information and belief, defendant Smyres directly, personally and deliberately sought out illegal sources of, and purchased, Pirated Copies and Foreign Editions, for the purpose of importing, illegally distributing and reselling such copies to consumers in the United States and elsewhere. Upon information and belief, Smyres was the moving, active conscious force behind the infringing activity, and each defendant, including Smyres, knowingly supervised and participated in such infringing and illegal activity in violation of plaintiffs' intellectual property rights, and had a direct financial

interest in, and stood to gain a direct financial benefit from, such deliberate infringing activity.

88.     Upon information and belief, in engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, defendants also personally induced, caused, and materially contributed to such infringing conduct.

89.     Upon information and belief, defendants did more than supply the means to facilitate the infringement of plaintiffs' intellectual property rights.  They also substantially participated in, and orchestrated, such infringing activities.

90.     Upon information and belief, defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would violate plaintiffs' intellectual property rights, including their copyrights and trademark rights in the Publishers' Authentic Works and other works.

91.     Upon information and belief, defendants directed and controlled the infringing activities alleged in this Complaint and were and are in a position to benefit economically from the infringement of plaintiffs' intellectual property rights, which they orchestrated.

92.     Upon information and belief, defendants were fully aware of the illegality of their efforts to purchase, import, distribute and sell Pirated Copies and Foreign Editions.

93.     Upon information and belief, defendants have intentionally and deliberately sold an unknown number of Pirated Copies and Foreign Editions through defendant TRU's internet web site, and through TRU's affiliate companies' physical

locations. In so doing, defendants have intentionally deprived plaintiffs and the authors

of the Authentic Works of the profits plaintiffs could have obtained from such sales, and

have thereby intentionally thwarted and hindered plaintiffs' abilities to sell to customers

in the United States. In so doing, defendants have also knowingly restricted and

interfered with plaintiffs' ability to control and exploit their distribution plans throughout

the United States. In so doing, defendants also have knowingly infringed plaintiffs' valid

registered copyrights and trademarks.

     94.    Upon information and belief, defendants' actions were willful, malicious

and made in bad faith.

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT**
(17 U.S.C. §§ 101 *et seq.*)

     95.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 94 of this Complaint.

     96.    The Publishers' Authentic Works constitute original works and

copyrightable subject matter pursuant to the Copyright Act, and they have been duly

registered by plaintiffs with the United States Copyright Office and published by

plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

     97.    At all relevant times, plaintiffs have been and still are the owners of all

rights, title and interest in and to their respective copyrights in the Publishers' Authentic

Works, which have never been assigned, licensed or otherwise transferred to any of

defendants, nor have such rights in the Publishers' Authentic Works been dedicated to the

public.

98.     Upon information and belief, beginning on an unknown date and continuing through the present, defendants TRU and Smyres, with knowledge of plaintiffs' respective ownership of the Authentic Works, and with knowledge of plaintiffs' duly registered copyrights in the Authentic Works, have infringed plaintiffs' copyrights by, among other things, deliberately importing, purchasing, distributing, and reselling Pirated Copies and Foreign Editions of the Publishers' Authentic Works to the public for profit, without the permission, license or consent of plaintiffs.

99.     Upon information and belief, defendants TRU and Smyres also have infringed plaintiffs' exclusive rights to reproduce, import, distribute, sell, and to authorize the reproduction, importation, distribution and sale of the copyrighted Authentic Works to the public by sale or other transfer of ownership, by, among other things, importing Pirated and Foreign Editions from Asia, and possibly elsewhere, from manufacturers whose products defendants knew or should have known were unauthorized and illegal, without the permission, license or consent of plaintiffs.

100.    As a result of defendants TRU and Smyres' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

101.    Upon information and belief, defendants TRU and Smyres' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

102.    Plaintiffs are entitled to recover from TRU and Smyres the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by TRU and Smyres as a result of their acts of copyright infringement as alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

## SECOND CAUSE OF ACTION
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
(17 U.S.C. §§ 101 *et seq.*)

103.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 102 of this Complaint.

104.    Upon information and belief, in addition to committing the direct acts of infringement alleged herein, defendants, individually and in concert, directly and intentionally sought out an illegal source of Pirated Copies and Foreign Editions, purchased such Infringing Copies with knowledge of their illegal nature and status, and contributed to the direct infringement of plaintiffs' copyrights by illegally distributing and selling the Infringing Works to consumers, to plaintiffs' detriment.

105.    Upon information and belief, defendants supervised such infringing and illegal activity in violation of plaintiffs' intellectual property rights, and each had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberate, malicious and infringing activity.

106.    Upon information and belief, by engaging in the illegal conduct alleged above, and in addition to directly organizing and effectuating such infringing activities, defendants each also induced, caused, and materially contributed to such infringing conduct.

107.    Upon information and belief, defendants did more than supply the means to facilitate and accomplish the infringement of plaintiffs' copyrights, but rather they also substantially participated in, and deliberately orchestrated such infringing activities to plaintiffs' detriment.

108.    Upon information and belief, defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would damage, violate and infringe plaintiffs' copyrights in the Authentic Works and other works.

109.    Upon information and belief, defendants directed and controlled the infringing activities alleged in this Complaint and were and are in a position to benefit economically from the infringement of plaintiffs' intellectual property rights which they so orchestrated.

110.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

111.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

112.    As a result of defendants' unlawful conduct as set forth above, defendants, in addition to their liability for direct infringement of plaintiffs' copyrights, are jointly and severally liable for contributory infringement of plaintiffs' copyrights and other intellectual property rights.

113.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

## THIRD CAUSE OF ACTION
## VICARIOUS COPYRIGHT INFRINGEMENT

(17 U.S.C. §§ 101 *et seq.*)

114.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 113 of this Complaint.

115.    Upon information and belief, in addition to committing the direct and contributory acts of infringement alleged herein, defendants, individually and in concert, encouraged and facilitated the illegal importation of Foreign Editions and the illegal copying of the Authentic Works in Asia and possibly elsewhere, by purchasing the Infringing Works with knowledge of or reckless disregard for their nature and status, and then importing, illegally distributing and selling such copies to consumers in the United States and elsewhere, to plaintiffs' detriment.

116.    Upon information and belief, defendants facilitated such infringing and illegal activity in violation of plaintiffs' intellectual property rights, and each had a direct financial interest in, and stood to gain a direct financial benefit from, the deliberate, malicious and infringing activity.

117.    Upon information and belief, by engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, defendants each also induced, caused, and materially contributed to such infringing conduct.

118.    Upon information and belief, defendants both did more than supply the means to effectuate the infringement of plaintiffs' copyrights, but rather they also substantially participated in, and stood to benefit financially from, such infringing activities to plaintiffs' detriment.

119.    Upon information and belief, defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would damage, violate and infringe plaintiffs' copyrights in the Authentic Works and other works.

120.    Upon information and belief, in addition to organizing, orchestrating and participating in the alleged infringements of plaintiffs' copyrights, defendants also were and are in a position to benefit economically from the infringement of plaintiffs' intellectual property rights which they so orchestrated.

121.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

122.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

123.    As a result of defendants' unlawful conduct as set forth above, both defendants, in addition to their liability for direct and contributory infringement of plaintiffs' copyrights, are jointly and severally liable for vicarious infringement of plaintiffs' copyrights and other intellectual property rights.

124.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

## FOURTH CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT

## VIOLATION OF IMPORT RIGHT
(17 U.S.C. § 602)

125.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 124 of this Complaint.

126.    The Publishers' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and have been duly registered with the United States Copyright Office and respectively published by plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

127.    At all relevant times, plaintiffs have been and still are the owners of all rights, title and interest in and to their respective copyrights in the Authentic Works, which have never been assigned, licensed or otherwise transferred to any of defendants, nor have such rights in the Authentic Works been dedicated to the public.

128.    Upon information and belief, on a date to be determined at trial, defendants deliberately sought out what they knew to be, suspected to be, or should have known to be sources of Pirated Copies and Foreign Editions of plaintiffs' merchandise, including such copies of the Authentic Works, with the intention of purchasing the Infringing Works, importing them into the United States and selling those copies through various mediums, to an unknown number of actual and potential customers in the United States, all without plaintiffs' permission or knowledge.

129.    Upon information and belief, defendants intentionally purchased and imported all or the vast majority of the Pirated Copies and Foreign Editions into the U.S. for infringing distribution and sale from unauthorized sources which were not licensed manufacturers, distributors or licensees of any of the plaintiffs.  Upon information and

belief, defendants knew that the sources of the Pirated Copies and Foreign Editions were not authorized manufacturers, distributors or licensees of plaintiffs.

130.    Upon information and belief, defendants imported Pirated Copies and Foreign Editions of plaintiffs' Authentic Works, from Asia and possibly elsewhere, into the United States with the intention and purpose of distributing and selling such Infringing Works in the United States and elsewhere, in violation of plaintiffs' exclusive rights to import and distribute their works pursuant to 17 U.S.C. § 602.

131.    Upon information and belief, from the commencement of their relationships with plaintiffs, and continuing through to the present, defendants, with knowledge of plaintiffs' respective ownership of the Authentic Works, and with knowledge of plaintiffs' duly registered copyrights in the Authentic Works, have infringed plaintiff's import rights by, among other things, deliberately purchasing, importing, distributing, and reselling the Pirated Copies and Foreign Editions, without the permission, license or consent of the plaintiffs.

132.    As a result of defendants' unlawful and deliberate conduct as set forth above, plaintiffs have been, and will continue to be, damaged.

133.    Upon information and belief, defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

134.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their acts of copyright infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

## FIFTH CAUSE OF ACTION
## TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

135.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 134 of this Complaint.

136.    Cengage is the owner and registrar of the distinctive and arbitrary design marks "ITP" and "PWS," Pearson is the owner and registrar of the distinctive word mark "Pearson," Wiley is the owner and registrar of the distinctive word mark "Wiley," and arbitrary design mark "JW" and McGraw-Hill is the owner and registrar of the distinctive word marks "McGraw-Hill" and "The McGraw-Hill Companies."

137.    Plaintiffs and defendants TRU and Smyres compete or intend to compete within the same markets.

138.    Through countless years of use and selective publicity throughout the world, the distinctive trademarks of the plaintiffs have attained secondary meaning in the relevant markets, becoming among the most well-known trademarks in the world. Plaintiffs have established strong reputations and substantial goodwill by reason of the success and reputation goods sold under their trademarks, immediately indicating to the public that products and services featuring such marks come from, or are sponsored or approved by plaintiffs.

139.    Upon information and belief, defendants TRU and Smyres have been using, and continue to use, plaintiffs' trademarks in commerce, in connection with their sale and distribution of Pirated Copies and Foreign Editions of plaintiffs' Authentic Works.

140.    Plaintiffs' Foreign Editions are of a materially different quality than their respective standard U.S. editions, in that they are of inferior quality (as described above) and are not intended for sale and distribution in the United States.

141.    Plaintiffs' trademarks are substantially similar to the counterfeit trademarks used by defendants TRU and Smyres in connection with the Pirated Copies and Foreign Editions.

142.    By committing the acts alleged herein, defendants TRU and Smyres intended to, and did, use, and capitalize upon, plaintiffs' distinctive and powerful trademarks in connection with their purchase, use, importation, distribution, sale, and the offering for sale, of the Pirated Copies and Foreign Editions of plaintiffs' Authentic Works.

143.    Upon information and belief, the circulation of the Pirated Copies and Foreign Editions in interstate and international commerce has caused confusion among plaintiffs' actual and potential customers, affiliates and other professional and individual entities or persons with which plaintiffs share professional relationships and associations.

144.    The circulation of the Pirated Copies and Foreign Editions in interstate and international commerce is highly likely to cause confusion among consumers as to the source of the Infringing Works.

145.    Upon information and belief, defendants TRU and Smyres have received substantial revenues and substantial profits arising out of the unauthorized use and exploitation of plaintiffs' trademarks to which they are not entitled, and plaintiffs have also suffered damages as a result of defendants' TRU and Smyres use of plaintiffs' trademarks, for which defendants TRU and Smyres are responsible.

146.    Defendants' TRU and Smyres actions constitute an infringement of

plaintiffs' respective trademark rights under 15 U.S.C. § 1114.

## SIXTH CAUSE OF ACTION
## FALSE ADVERTISING/UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

147.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 146 of this Complaint.

148.    By using, importing, distributing, offering for sale and selling Pirated

Copies and Foreign Editions of plaintiffs' Authentic Works, defendants TRU and Smyres

have willfully used false designations of origin in commerce in order to cause confusion

as to the origin, sponsorship, and/or approval of the Pirated Copies and Foreign Editions

of plaintiffs' Authentic Works.

149.    Plaintiffs' respective trademarks, including the distinctive and arbitrary

Cengage design marks "ITP" and "PWS," the distinctive word mark "Pearson," the

distinctive word mark "Wiley," and arbitrary design mark "JW," and the distinctive word

marks "McGraw-Hill" and "The McGraw-Hill Companies," as reflected throughout

plaintiffs' respective Authentic Works, are not functional elements of their respective

textbooks, but rather are distinctive word marks and arbitrary and fanciful designs,

deserving of the strongest protection under the Lanham Act.

150.    Defendants' TRU and Smyres' circulation of the Pirated Copies and

Foreign Editions, which falsely designate their source or origin, in interstate and

international commerce, has deceived, and is highly likely to continue to deceive,

consumers concerning the true source of the Infringing Works.

151.    Plaintiffs' Foreign Editions are of a materially different quality than their respective standard U.S. editions, in that they are of inferior quality (as described above) and are not intended for sale and distribution in the United States.

152.    The circulation of the Infringing Works in interstate and international commerce is highly likely to cause confusion among consumers as to the source of the Infringing Works.

153.    Plaintiffs have suffered irreparable commercial and reputational injury as a result of the false designation of origin of the Infringing Works.

154.    Defendants' TRU and Smyres acts of infringement have been committed in the Southern District of New York, within the jurisdiction of this Court, and elsewhere.

**SEVENTH CAUSE OF ACTION**
**TRADEMARK DILUTION**
(15 U.S.C. § 1125(c))

155.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 154 of this Complaint.

156.    Plaintiffs' respective trademarks, including the distinctive and arbitrary Cengage design marks "ITP" and "PWS," the distinctive word mark "Pearson," the distinctive word mark "Wiley," and arbitrary design mark "JW," and the distinctive word marks "McGraw-Hill" and "The McGraw-Hill Companies," as reflected throughout plaintiffs' respective Authentic Works, are not functional elements of their respective textbooks, but rather are distinctive word marks and arbitrary and fanciful designs, deserving of the strongest protection under the Lanham Act.

157.    The plaintiffs' respective trademarks are famous, and they are, and have been for many years, widely recognized by the general consuming public as being associated with the respective Publishers.

158.    By selling the Pirated Copies and Foreign Editions throughout the United States and possibly elsewhere, defendants TRU and Smyres are using plaintiffs' famous and distinctive trademarks in interstate commerce for a commercial purpose.

159.    Plaintiffs' Foreign Editions are of a materially different quality than their respective standard U.S. editions, in that they are of inferior quality (as described above) and are not intended for sale and distribution in the United States.

160.    Defendants TRU and Smyres began using the infringing marks well after plaintiffs' marks had become famous.

161.    Defendants TRU and Smyres are willfully using plaintiffs' trademarks to profit from their reputation and are thereby causing plaintiffs' trademarks to become less distinctive.

162.    Defendants' TRU and Smyres use of the plaintiffs' trademarks on the Infringing Works tarnishes the reputation of the plaintiffs' respective marks, as they are of a lesser quality than that which consumers expect from products bearing plaintiffs' respective trademarks.

163.    Defendants' TRU and Smyres use of the plaintiffs' trademarks lessens plaintiffs' capacity to identify only products authorized by, sponsored by, or somehow affiliated with their respective trademarks.


## EIGHTH CAUSE OF ACTION
## TRAFFICKING IN COUNTERFEIT

## DOCUMENTATION OR LABELS
### (18 U.S.C.S. § 2318)
### (Against All Defendants)

164.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 163 of this Complaint.

165.    Defendants have knowingly and willfully trafficked into the United States counterfeit documentation and labels affixed to literary works in the form of the Pirated Copies.

166.    Defendants knowingly used the United States mail/postal service or a facility of interstate or foreign commerce to traffic in counterfeit documentation and labels affixed to the Pirated Copies.

167.    Upon information and belief, defendants have been using counterfeit labels or counterfeited documentation or packaging, and continue to use counterfeits of plaintiffs' copyrighted label, documentation, and packaging in commerce, in connection with their sale and distribution of counterfeit textbooks, including the Pirated Copies of the Authentic Works of plaintiffs.

168.    Cengage, Pearson and Wiley's labels, documentation and packaging, which are registered with the United States Copyright Office and the United States Patent and Trademark Office, are substantially similar to the counterfeit labels, documentation and packaging used by defendants in connection with the Pirated Copies, and appear to be genuine, but are not.

169.    Cengage, Pearson and Wiley are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their violation of 18 U.S.C.S. § 2318 as

alleged above, or statutory damages as provided in 18 U.S.C.S. § 2318.  At present, the

amount of such damages, gains, profits, and advantages cannot be fully ascertained by

plaintiffs and will be established according to proof at trial.


## NINTH CAUSE OF ACTION
## ILLEGAL IMPORTATION OF GOODS BEARING INFRINGING UNITED STATES TRADEMARKS OR NAMES
### (15 U.S.C.S. § 1124 and 19 U.S.C.S. § 1526)

170.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 169 of this Complaint.

171.    Defendants knowingly imported Pirated Copies, of foreign manufacture,

of the Authorized Works, which imitate the name of Cengage, Pearson and Wiley's

manufacturer and copy their Authentic Works, including their trademarks, which are

registered with the United States Copyright Office and the United States Patent and

Trademark Office respectively.

172.    By importing Pirated Copies of Cengage, Pearson and Wiley's Authentic

Works, defendants have willfully used counterfeit trademarks which cause confusion as

to the origin, sponsorship, and/or approval of the Pirated Copies, and which are

calculated to induce the public to believe that the Pirated Copies were authentically

manufactured in the United States.

173.    Defendants also knowingly imported Foreign Editions of plaintiffs'

Authentic Works, bearing plaintiffs' trademarks, which are registered with the United

States Patent and Trademark Office, without plaintiffs' consent.

174.    Plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits, and advantages obtained and enjoyed by defendants as a result of their violation of 15 U.S.C.S. §§ 1124 and 19 U.S.C.S. § 1526, as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by plaintiffs and will be established according to proof at trial.

**WHEREFORE**, plaintiffs Cengage, Pearson, Wiley and McGraw-Hill demand that judgment be entered against defendants as follows:

(1)    That defendants be required to account for and pay over to plaintiffs all gains, profits, and advantages realized from their unlawful conduct;

(2)    That defendants be required to pay to plaintiffs such damages as plaintiffs have sustained as a consequence of defendants' unlawful acts as alleged above, including actual damages or statutory damages, at plaintiffs' election, pursuant to 17 U.S.C. § 504;

(3)    That defendants be required to pay to plaintiffs such damages as plaintiffs have sustained as a consequence of defendants' unlawful acts as alleged above, including statutory damages or multiple damages in the amount of three times the damages sustained by plaintiffs, pursuant to 15 U.S.C. § 1117;

(4)    That defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, plaintiffs' respective marks pursuant to 15 U.S.C. § 1118;

(5)    That defendants be required to pay actual damages and profits or statutory damages, at plaintiffs' election, pursuant to 18 U.S.C. § 2318;

(6)     That defendants be preliminarily and permanently enjoined from further infringing upon the plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

(7)     That defendants be preliminarily and permanently enjoined from further infringing upon the plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

(8)     That defendants be required to pay profits, damages, costs, and attorney fees in connection with this action;

(9)     That final judgment be entered in favor of plaintiffs and against defendants; and

(10)     That plaintiffs be granted such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        March 28, 2008

COZEN O'CONNOR

By: _____
Aaron Georghiades, Esq. (AG8110)

Attorneys for Plaintiffs
Cengage Learning, Inc. (f/k/a
Thomson Learning, Inc.), Pearson
Education, Inc., and John Wiley &
Sons, Inc., and the McGraw-Hill
Companies

909 Third Avenue, 17th Floor
New York, New York 10022
Phone: (212) 453-3890
Facsimile: (877) 526-3076
E-mail:ageorghiades@cozen.com

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK       )
                        )  ss
COUNTY OF NEW YORK      )

     Elba Iglesias, being duly sworn, deposes and says that: Deponent is not a party to this

action, is over 18 years of age and is employed by Cozen O'Connor, 909 Third Avenue, New

York, NY  10022.

     On March 28, 2008 Deponent served the within AMENDED COMPLAINT upon:

        Neil B. Mooney, Esq.
        The Mooney Law Firm, LLC
        1911 Capital Circle N.E.
        Tallahassee, FL 32308

     by depositing a true copy thereof in a securely sealed, properly addressed fully postpaid,

first class mail wrapper in an official depository under the exclusive care and custody of the

United States Post Office.

                                    ELBA IGLESIAS

Sworn to before me this 28th day
of March 2008.

                                    KAREN LYON
                          COMMISSIONER OF DEEDS
     Notary Public          CITY OF NEW YORK #5-569
                   CERTIFICATE FILED IN: NEW YORK COUNTY
                   COMMISSION EXPIRES 06/01/20 08